FILED

JUL 3 1 2025

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____DEPUTY

Jason Campbell;
JCFilms Studios, Inc.;
and BMC Productions, LLC.
208 Sherwood Road
Bridgeport, WV 26330
Defendants are self-represented.

---

## UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA

---

BRYCEN NEWMAN, an individual; RICHARD NEWMAN, an individual; and MIRACLE AT MANCHESTER FOUNDATION, INC., a California nonprofit corporation,

Plaintiffs, v.

JASON CAMPBELL, an individual; BMC PRODUCTIONS, LLC, a West Virginia limited liability company; and JCFILMS STUDIOS INC., a West Virginia nonprofit corporation,

Defendants.

---

## Case No.: 25CV1736RBMDEB

### JOINT ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES
(With Motion to Dismiss Pursuant to First-Filed Rule)

**COME NOW** Defendants JASON CAMPBELL, BMC PRODUCTIONS, LLC, and JCFILMS STUDIOS INC. (hereinafter collectively "Defendants"), appearing **pro se**, and hereby jointly submit their Answer to the Complaint filed by Plaintiffs BRYCEN NEWMAN, RICHARD NEWMAN, and MIRACLE AT MANCHESTER FOUNDATION, INC., and state as follows:

1.  Defendant does not dispute the facts set forth in Paragraphs 34, of Plaintiff's Complaint.

2.  Defendant denies the allegations set forth in Paragraphs 1, 2, 3, 10, 16, 17, 18, 19, 20, 22, 27, 28, 29, 31, 41, 45, 46, 47, 51, 56, 58, 60, 62, 63, 64, 65, 66, 68, 69, 70, 71, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 95, 96, 97, 99, 100, 101, 102, 103, 104, 108 (a, b, c, d), 109, 110, 117, 118, 119, 121 (a, b, c, d), 122, 123, 124, 125, 128, 129, 131, 132, 133, 134, 135, 138, 139, 140, 141, 142, 143, 145, 146, 147, 148, 149, 151, 152, 153, 154, 155, 157 (a, b, c), 158, 159 (a, b, c), 160, 161 (a, b) 162, 166, 167, 168, 169, 170, 172, 175, 176, 177, 178, 179, 180, 181 (a, b), 182, 183, 184 (a, b) 185, 186, 187 (a, b, c), 188,  191, 192, 193 (a, b, c, d), 194, 195, 196 *a, b, c, d), 197, 198, 202, 203, 204, 205, 206, 207, 208, 210, 211 (a, b, c), 212 (a, b, c), 217, 218, 219, 220, 221, 222 (a,

b, c), 223, 224, 225, 226, 227, 228, 229, 230 (a, b, c, d), 231, 232, 233, 234, 235, 237, 238, 239, and 240 (a, b, c) 241 of Plaintiff's Complaint.

3.  Defendant lacks sufficient information to either affirm or deny the allegations set forth in Paragraphs 4, 5, 6, 7, 8, 9, 11, 12, 13, 14, 15, 21, 23, 24, 25, 26, 30, 32, 33, 35, 36, 37, 38, 39, 40, 42, 43, 44, 48, 49, 50, 52, 53, 54, 55, 57, 59, 61, 62, 67, 72, 73, 74, 75, 76, 77, 94, 98, 105, 106, 107, 111, 112, 113, 114, 115, 116, 119, 126, 127, 130, 136, 137, 143, 150, 156, 163, 164, 165, 171, 173, 174,189, 190, 199, 200, 201, 209, 213, 214 (a, b, c), 215, 216, and 236 of Plaintiff's Complaint. To the extent that Defendant does possess sufficient information, Defendant denies those allegations.

## AFFIRMATIVE DEFENSES

1.  Without conceding that they bear the burden of proof on any of the following, and without admitting any liability, Defendants assert the following affirmative defenses:

2.  Failure to State a Claim.  The Complaint fails to state a claim upon which relief may be granted.  At no point during the production of the film was a legal entity known as the Miracle at Manchester Foundation formed or registered.

3.  Lack of Personal Jurisdiction. This Court lacks personal jurisdiction over one or more Defendants.

4.  Improper Venue. Venue is improper in this district under the relevant provisions of 28 U.S.C. § 1391.

5.  First-Filed Rule / Prior Pending Action – A prior and substantially similar action between the parties was filed on February 27], 2025, in the Circuit Court of Harrison County, West Virginia, styled Jason Campbell v. Richard Newman, and remains pending. Plaintiffs were fully aware of the prior proceeding and have deliberately evaded service. This matter should be dismissed or stayed under the First-Filed Rule to prevent duplicative litigation, forum shopping, and conflicting judgments.

5.  California recognizes this principle through the doctrine of exclusive concurrent jurisdiction and California Code of Civil Procedure § 430.10(c), which states: "There is another action pending between the same parties on the same cause of action."

6.  California case law further supports this application. See, e.g., Caiafa Prof. Law Corp. v. State Farm Fire & Cas. Co. (1993) 15 Cal.App.4th 800, 803–804; People v. Sup. Ct. (Kern County) (1974) 39 Cal.App.3d 830, 835.

7.  Unclean Hands – Plaintiffs' claims are barred in whole or in part by their own misconduct and harassment against the Defendants.

8.    Estoppel – Plaintiffs are estopped from asserting claims inconsistent with their past conduct.

9.    Waiver – Plaintiffs waived one or more claims asserted in the Complaint.

10.    Laches – Plaintiffs unreasonably delayed bringing this action to the prejudice of Defendants.

11.    No Causation – Any damages claimed by Plaintiffs were not caused by Defendants.

12.    No Damages – Plaintiffs have not suffered any legally cognizable damages as a result of any conduct by Defendants.

13.    Failure to Mitigate – Plaintiffs failed to take reasonable steps to mitigate any alleged damages.

14.    Lack of Standing – One or more Plaintiffs lack standing to assert the claims in the Complaint.

15.    Defendants reserve the right to assert additional affirmative defenses as discovery continues.

**WHEREFORE,** Defendants respectfully request the following relief:

1.    That this Court dismiss the Complaint in its entirety pursuant to the First-Filed Rule, in deference to the earlier-filed and still-pending civil action in West Virginia;

2.    That this Court alternatively stay the instant proceedings pending resolution of the first-filed matter;

3.    That judgment be entered in favor of Defendants on all claims;

4.    That Plaintiffs take nothing by way of their Complaint;

5.    That Defendants be awarded their costs of suit and attorneys' fees as allowed by law;

6.    and That the Court award such other and further relief as it deems just and proper.

Respectfully submitted,
Dated: July 24, 2025
Jason Campbell, pro se
BMC Productions, LLC, pro se
JCFilms Studios Inc., pro se
208 Sherwood Road

Bridgeport, WV 26330

Signed: _____. Date: _____

AO 441    Summons in a Civil Action

# United States District Court
## SOUTHERN DISTRICT OF CALIFORNIA

Brycen Newman, an individual; Richard Newman, an individual; Miracle Children's Foundation, Inc., a California nonprofit corporation

*Plaintiff*

Civil Action No. 25-cv-1736-RBM-DEB

**V.**

Jason Campbell, an individual; Heather Mudrick Campbell, an individual; JC Films Studios, Inc., a West Virginia nonprofit corporation; BMC Productions, LLC, a West Virginia limited liability company; Bridgestone Multimedia Group, LLC, a Delaware limited liability company; Does 1-50, inclusive     *Defendant*

## SUMMONS IN A CIVIL ACTION

To:    *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) - or 60 days if you are the United States or a United States agency, or an office or employee of the United States described in Fed. R. Civ. P. 12(a)(2) or (3) - You must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Benjamin M. Cutchshaw
650 Town Center Drive, Suite 1500
Costa Mesa, CA 92626
(949) 724-0900

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Date:    7/8/25

John Morrill
*CLERK OF COURT*

S/    A. Islas

*Signature of Clerk or Deputy Clerk*

AO 441     Summons in a Civil Action (Page 2)

---

Civil Action No. 25-cv-1736-RBM-DEB                       Date Issued:              7/8/25

## PROOF OF SERVICE
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(1))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____.

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____; or

☐ I left the summons at the individual's residence or place of abode with *(name)* _____

_____, a person of suitable age and discretion who resides there,

on *(date)* _____, and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of the individual)* _____, who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____; or

☐ I returned the summons unexecuted because _____; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____.

I declare under penalty of perjury that this information is true.

Date: _____        _____
                                                              *Server's Signature*

                                                   _____
                                                              *Printed name and title*

                                                   _____
                                                              *Server's address*

---

### NOTICE OF RIGHT TO CONSENT TO TRIAL BY A UNITED STATES MAGISTRATE JUDGE

IN ACCORDANCE WITH THE PROVISION OF 28 USC 636(C) YOU ARE HEREBY NOTIFIED THAT A U.S. MAGISTRATE JUDGE OF THIS DISTRICT MAY, UPON CONSENT OF ALL PARTIES, CONDUCT ANY OR ALL PROCEEDINGS, INCLUDING A JURY OR NON-JURY TRIAL, AND ORDER THE ENTRY OF A FINAL JUDGMENT.

YOU SHOULD BE AWARE THAT YOUR DECISION TO CONSENT OR NOT CONSENT IS ENTIRELY VOLUNTARY AND SHOULD BE COMMUNICATED SOLELY TO THE CLERK OF COURT. ONLY IF ALL PARTIES CONSENT WILL THE JUDGE OR MAGISTRATE JUDGE WHOM THE CASE HAS BEEN ASSIGNED BE INFORMED OF YOUR DECISION.

JUDGMENTS OF THE U.S. MAGISTRATE JUDGES ARE APPEALABLE TO THE U.S. COURT OF APPEALS IN ACCORDANCE WITH THIS STATUTE AND THE FEDERAL RULES OF APPELLATE PROCEDURE.

**SAMINI BLOCK APC**
Bobby Samini (SBN 181796)
bobby.samini@saminilaw.com
Benjamin M. Cutchshaw (SBN 263483)
benjamin.cutchshaw@saminilaw.com
650 Town Center Drive, Suite 1500
Costa Mesa, California 92626
Telephone: (949) 724-0900

*Attorneys For Plaintiffs*
BRYCEN NEWMAN; RICHARD NEWMAN; and
MIRACLE CHILDREN'S FOUNDATION

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYCEN NEWMAN, an individual, RICHARD NEWMAN, an individual, and MIRACLE CHILDREN'S FOUNDATION, INC., a California nonprofit corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>JASON CAMPBELL, an individual, HEATHER MUDRICK CAMPBELL, an individual, JC FILMS STUDIOS, INC., a West Virginia nonprofit corporation, BMC PRODUCTIONS, LLC, a West Virginia limited liability company, and BRIDGESTONE MULTIMEDIA GROUP, LLC, a Delaware limited liability company and DOES 1–50, inclusive,<br><br>Defendants. | Case No.: **'25CV1736 RBM DEB**<br><br>**COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs BRYCEN NEWMAN, an individual, RICHARD NEWMAN, an individual, and MIRACLE CHILDREN'S FOUNDATION, INC., formerly known as Miracle at Manchester Foundation Inc., a California nonprofit corporation (herein referred to collectively as "Plaintiffs"), through their undersigned counsel, hereby allege against Defendants JASON CAMPBELL, an individual, HEATHER MUDRICK CAMPBELL, an individual, JC FILMS STUDIOS, INC., a West Virginia nonprofit corporation, BMC PRODUCTIONS, LLC, a West Virginia limited liability company, BRIDGESTONE MULTIMEDIA GROUP, LLC, a Delaware limited liability company, and DOES 1–50, inclusive (herein referred to collectively as "Defendants") as follows:

## PRELIMINARY STATEMENT

1.       This case arises from a calculated betrayal of trust and a brazen misappropriation of a family's inspiring true story—one born from tragedy and transformed into hope. Plaintiffs, including Brycen Newman, a teenage cancer survivor whose miraculous recovery became a source of faith and inspiration, and the nonprofit Miracle Children's Foundation, created to honor that story and serve pediatric cancer patients, bring this action to hold Defendants accountable for their exploitation of Plaintiffs' name, likeness, story, charitable identity, and intellectual property for personal gain.

2.       Through a series of false promises, concealed donations, unauthorized registrations, and knowingly fraudulent accounting, Defendants orchestrated the production and commercial release of *Miracle at Manchester*, a motion picture based on Brycen Newman's life, while stripping Plaintiffs of their rightful ownership, control, and profits. Defendants secured a $150,000 charitable donation under false pretenses, falsely claimed sole copyright ownership of both the screenplay and the film, entered into unauthorized distribution agreements, and misused Plaintiffs' nonprofit identity to solicit additional funds and promote their own ventures.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

3.      This is not merely a case of breach of contract or unpaid royalties—it is a coordinated scheme involving fraud, conversion, misappropriation of name and likeness, and copyright infringement. Plaintiffs bring this action to reclaim what is rightfully theirs: control over their story, their charitable mission, and the fruits of their labor and generosity. They seek injunctive relief, damages, restitution, and judicial declarations to prevent further harm and restore integrity to a project born of faith, not fraud.

## THE PARTIES

4.      Plaintiff, Brycen Newman ("Newman"), is a person of the full age of majority and a resident of the State of California in this district.

5.      Plaintiff, Richard Newman ("Richard Newman"), is a person of the full age of majority and a resident of the State of California in this district.

6.      Plaintiff Miracle Children's Foundation, formerly known as Miracle at Manchester Foundation ("Miracle"), is a California not-for-profit corporation having its principal place of business in Del Mar, California and received nonprofit status upon formation on or about November 17, 2022.

7.      Prior to its incorporation, the entity now known as Plaintiff Miracle operated as a community-based initiative under the direction of its founder, Plaintiff Richard Newman ("Richard Newman"), who is also named individually as the pre-incorporation promoter herein in the alternative.

8.      At all times relevant, Plaintiff Richard Newman acted on behalf of the intended nonprofit entity in good faith reliance on the prospective incorporation and executed agreements with third parties in the name of the nonprofit Miracle as the "Interim President," with full disclosure of intent and purpose as to Defendants who were at all times fully aware of its pre-incorporation status.

9.      Upon information and belief, Defendant Jason Campbell ("Campbell"), is a person of the full age of majority and is a resident of the State of

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

West Virginia. Defendant Campbell is engaged in producing motion pictures in California, including the one at issue herein.

10.     Upon information and belief, Defendant Heather Mudrick Campbell ("Heather Campbell") is a person of the full age of majority and is a resident of the State of West Virginia. Defendant Heather Campbell is engaged in producing motion pictures in California, including the one at issue herein and is the business partner of Defendant Campbell in regard to BMC productions, LLC *dba* JC Films Studios, Inc., personally providing her home for use as their office, providing financing for the company, and co-directing its activities, inclusive of fundraising and film production with Defendant Campbell. Defendants Campbell and Heather Campbell are collectively referred to hereinafter as the "Campbell Defendants."

11.     Upon information and belief, Defendant JC Films Studios, Inc. ("JC"), is a West Virginia limited not-for-profit company owned by the Campbell Defendants, with its principal place of business in Bridgeport, West Virginia. JC produces, markets, advertises, reproduces, and/or distributes motion pictures in the State of California, including the motion picture made the subject of this matter.

12.     Upon information and belief, Defendant, BMC Productions, LLC ("BMC"), is a West Virginia limited liability company with its principal place of business in Bridgeport, West Virginia. Defendant BMC produces, sells, markets, advertises, reproduces, and/or distributes motion pictures in the State of California, including the motion picture made the subject of this matter. Upon information and belief, JC is the *dba* for BMC.

13.     Plaintiffs are informed and believe, and thereon allege, that at all relevant times herein mentioned, Defendant Campbell is and was the alter ego of Defendant BMC *dba* JC, and that there exists such a unity of interest and ownership between them that the separate personalities of the corporation and the individual no longer exist, and that if the acts are treated as those of the corporation alone, an inequitable result will follow.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

14.     Plaintiffs are informed and believe, and thereon allege, that the BMC *dba* JC is, and at all relevant times was, inadequately capitalized, failed to maintain corporate formalities, commingled personal and corporate funds, diverted corporate assets for personal use, used the corporation as a mere shell or conduit for the conduct of the individual Defendants' business, and otherwise failed to adhere to the separate existence required of a duly organized corporate entity.

15.     Plaintiffs are informed and believe, and thereon allege, that Defendant Campbell exercised complete domination and control over the BMC *dba* JC in such a manner that JC had no separate mind, will, or existence of its own, and was merely the instrumentality or business conduit.

16.     Adherence to the fiction of the separate existence of the BMC *dba* JC as distinct from Defendant Campbell would permit an abuse of the corporate privilege and would sanction fraud, promote injustice, and permit the evasion of legal obligations, including those owed to Plaintiffs.

17.     Plaintiffs are informed and believe, and thereon allege, that at all relevant times herein mentioned, Defendant Heather Campbell is and was the alter ego of Defendant BMC *dba* JC, and that there exists such a unity of interest and ownership between them that the separate personalities of the corporation and the individual no longer exist, and that if the acts are treated as those of the corporation alone, an inequitable result will follow.

18.     Plaintiffs are informed and believe, and thereon allege, that the BMC *dba* JC is, and at all relevant times was, inadequately capitalized, failed to maintain corporate formalities, commingled personal and corporate funds, diverted corporate assets for personal use, used the corporation as a mere shell or conduit for the conduct of Defendant Heather Campbell's personal business, and otherwise failed to adhere to the separate existence required of a duly organized corporate entity.

19.     Plaintiffs are informed and believe, and thereon allege, that Defendant Heather Campbell exercised complete domination and control over the BMC *dba*

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

JC in such a manner that JC had no separate mind, will, or existence of its own, and was merely the instrumentality or business conduit.

20.   Adherence to the fiction of the separate existence of BMC *dba* JC as distinct from Defendant Heather Campbell would permit an abuse of the corporate privilege and would sanction fraud, promote injustice, and permit the evasion of legal obligations, including those owed to Plaintiffs.

21.   Upon information and belief, Defendant, Bridgestone Multimedia Group, LLC ("BMG"), is a Delaware limited liability company with its principal place of business in Tempe, Arizona. Defendant BMG sells, markets, advertises, reproduces, and/or distributes motion pictures in the State of California, including the motion picture made the subject of this matter.

## JURISDICTION AND VENUE

22.   This Court has jurisdiction over this matter under 28 U.S.C. § 1331 and under: (a) 28 U.S.C. § 1338(a), as this matter involves an action arising under Acts of Congress relating to copyrights, specifically 17 U.S.C. § 101 et seq., and trademarks, specifically 15 U.S.C. § 1125; and (b) 28 U.S.C. § 1338(b), as this matter involves an action asserting a claim of unfair competition which is joined with a substantial and related claim under copyright and trademark law.

23.   This Court has jurisdiction under the Lanham Act (15 U.S.C. § 1051 et seq.).

24.   This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

25.   Jurisdiction is also proper under 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between all Plaintiffs and all Defendants, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

26.   Plaintiffs are citizens and residents of San Diego County, California. Defendants Campbell and Heather Campbell are residents of the State of West

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

Virginia. Defendants JC and BMC are headquartered in West Virginia. Defendant BMG is headquartered in the State of Arizona.

27.    Defendants each conduct business in and caused harm in this district.

28.    Plaintiffs are, and at all relevant times were, individuals or nonprofit entities with protectable interests in revenues, publicity rights, and copyrights in this district.

29.    Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b), in that this is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. The motion picture at the center of this litigation, *Miracle at Manchester*, was produced and filmed in San Diego, California, and the breach of the agreement occurred here, as Defendants are subject to personal jurisdiction in this location.

## **GENERAL ALLEGATIONS**

30.    Plaintiff Brycen Newman is a cancer survivor. At the age of 15, he was diagnosed with brain cancer, and his journey through four surgeries spanning 40 hours and countless hours of chemotherapy is a testament to the strength of his character and his indomitable faith. Before departing to Florida for radical experimental treatment after the surgeries and standard treatment failed to stop the cancer, representatives from his school, Cathedral Catholic High, invited Newman to say goodbye to some students. When he arrived at Manchester Field on the campus, he was stunned to find the stadium filled with the entire student body and faculty, 1,600 strong, waiting to send him off. What ensued was a massive group prayer with all hands stretching out, linked together over his head, occasioning a great wave of warmth to spread over his body. Several days later, before the family left for the experimental trials in Florida, Newman's neurosurgeon called his mother and father to return to the hospital, where he informed them all that somehow, miraculously, the cancer was gone. Because of the prayer, this became

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

1   known as the "Miracle at Manchester," resulting in his life story becoming the

2   subject of a motion picture related to the event.

3       31.    Before meeting the Campbell Defendants, JC, and BMC, Plaintiffs had

4   no knowledge of or any experience in the entertainment business. They had no

5   experience or knowledge of film production, sales, or distribution.

6       32.    The Campbell Defendants, JC, and BMC are experienced in film

7   production, with expertise in direction, sales, and distribution. Defendants

8   Campbell and JC market themselves to the public as creators of faith-based films.

9       33.    Defendant BMG is experienced in the business of marketing,

10   distribution, and exploitation of motion pictures.

11       34.    Upon information and belief, Defendants Campbell, JC, and BMC had,

12   before entering into the April 2022 Investment Agreement with Plaintiffs, an

13   existing and ongoing business relationship with Defendant BMG.

14       35.    On April 23, 2022, Plaintiffs entered into an "Investment Agreement"

15   with Defendant JC relative to the development, production, and distribution of the

16   proposed feature film *Miracle at Manchester* (the "Film"), based on the life story of

17   Plaintiff Newman. The April 2022 Investment Agreement is attached hereto as

18   **Exhibit 1** and incorporated herein by this reference ("Investment Agreement").

19       36.    The Investment Agreement specified that Defendant JC would produce

20   the Film "for" Plaintiffs; that Defendant JC would "manage" production and

21   distribution of the film; and that "ownership" and thereby the copyright of the Film

22   would be shared equally between Plaintiff Newman (33.33%), Plaintiff Miracle

23   (33.33%), and Defendant JC (33.33%). The Investment Agreement also specifies

24   that "all Distribution efforts will be mutually agreed" and that Plaintiffs would

25   collectively receive 66.66% of the "GROSS DISTRIBUTION RECEIPTS"

26   generated by the Film in perpetuity. The Investment Agreement also provided that

27   Plaintiffs could access and review the books and records related to the production

28   and distribution of the film upon reasonable notice.

37.     In an addendum to the Investment Agreement, Defendant Campbell offered in writing to sell the screenplay and hence its copyright, to Plaintiffs for $1,000 which Plaintiffs accepted providing the $1,000 to Defendant Campbell (see **Exhibit 2**, confirming email and **Exhibit 3**, payment confirmation, each attached hereto and incorporated by this reference.)

38.     Defendant Campbell nonetheless copyrighted the screenplay in his sole name, ignoring the sale (see **Exhibit 4**, copyright registration, attached hereto and incorporated herein by this reference). Defendant Campbell, through JC, also wrongfully claimed sole copyright on the Film itself.

39.     The Film was produced by the Campbell Defendants and BMC *dba* JC following the execution of the Investment Agreement, with pre-production and production occurring in San Diego, California, in May and June 2022. Defendants Campbell and JC created the script, budget, and schedule for the Film, and Plaintiff Miracle provided the funding for the Film, arranging a donation of $100,000 from a California foundation ("Miracle Donor") to JC expressly for the Film costs.

40.     Unknown to Plaintiffs, Defendant Campbell, on behalf of JC and BMC, approached the Miracle Donor and secured an additional $50,000 donation for the production of the film bringing the total of the donation in the amount of $150,000 ("Donation"). This fact was just uncovered by Plaintiffs on May 6, 2025, after receiving documentation relating thereto from the office of the Miracle Donor. This documentation, inclusive of the agreement between the Miracle Donor and Defendant JC (specifying that all the money was to be used for the production of the Film) and a receipt from JC each for $150,000, is attached hereto as **Exhibit 5** and incorporated herein by this reference. This additional $50,000 windfall for Defendants has been concealed and never disclosed by Defendants to date ("Undisclosed $50,000 Donation").

41.     Upon information and belief, as a result of the Donation believed to be only $100,000 arranged by Plaintiffs through their Miracle Donor, the Campbell

Defendants, JC, and/or BMC were not required to provide any financing for the production, editing, or completion of the Film which they had budgeted at $100,000. After the completion of principal photography for the film, Defendant Campbell provided Plaintiffs a budget for the purported spend for the Film in the amount of $126,000 on May 23, 2022 (**Exhibit 6**, attached hereto and incorporated herein by this reference).

42.     Upon information and belief, the post-production and editing of the Film were performed by the Campbell Defendants, JC, and BMC, and completed in August or September 2022.

43.     Pursuant to paragraph 5(c) of the Investment Agreement, Plaintiffs were entitled to inspect the books of JC and BMC upon reasonable notice. On February 23, 2023, Plaintiffs sent written requests for inspection to take place on March 7 or March 8 to Defendant Campbell on behalf of JC and BMC (**Exhibit 7**, attached hereto and incorporated herein by this reference). Defendants never responded. The request was made again on February 26, 2023, but again, there was no response. Thereafter, despite repeated requests to date, Plaintiffs were never provided any verified financial information from the Campbell Defendants, JC, or BMC regarding the cost of the Film.

44.     Without any knowledge or approval from Plaintiffs, on August 26, 2022, Defendants Campbell, JC Films, and BMC filed an "Amendment to The Articles of Incorporation" with the Ohio Secretary of State, changing the name of "Ohio Helping Hands, Inc.," a non-profit corporation owned exclusively by Defendants Campbell, JC, and BMC, to "Miracle At Manchester Foundation, Inc.," the then name of Plaintiffs' foundation. Attached hereto as **Exhibit 8** is the August 26, 2022 "Amendment to The Articles of Incorporation", signed by Defendant Campbell holding himself out to be the president of the foundation, along with Defendant Heather Campbell being named Secretary, which was owned by Plaintiffs.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

45.     Without any notice, consent or approval of Plaintiffs, in direct contravention of the April 2022 Investment Agreement requiring mutual approval over the distribution of the Film, Defendants BMC and BMG entered into a "License and Distribution Agreement" on November 4, 2022, providing BMG exclusive worldwide distribution rights to the Film ("Distribution Agreement"). In this Distribution Agreement, Defendant BMC *dba* JC misrepresented that it retains ownership of all IP and owns or controls all rights to the "title." The Distribution Agreement contains the signatures of Jason Campbell on behalf of Defendants BMC and Robert L. Campbell on behalf of BMG. The Distribution Agreement is attached hereto as **Exhibit 9** and is incorporated herein by this reference.

46.     In a deliberate act of deception, Campbell responded on November 20, 2022—after the Distribution Agreement with BMG had already been signed, stating he would not discuss any distribution efforts until after the premiere of the Film scheduled for December 3, 2022, thereby, on information and belief, falsely implying that no such agreement had yet been executed.

47.     Upon information and belief, Defendants commenced the worldwide distribution of the Film on or about March 31, 2023, without the contractually required approval of Plaintiffs.

48.     Upon information and belief, Defendant BMG has made payments to Defendants BMC and the Campbell Defendants pursuant to the unauthorized Distribution Agreement.

49.     As of the date of the filing of this Complaint, Defendants have failed to make any payments to Plaintiffs, despite amicable demands. (See **Exhibit 10** and **Exhibit 11**, each attached hereto and incorporated herein by this reference.)

50.     Defendants' release of the Film has been advertised, distributed, offered for sale, and/or sold throughout much of the United States, including this judicial district.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

51.     Defendants, and each of them, have never obtained a license or other authority from Plaintiffs to reproduce, or to produce the life story of Plaintiff Newman, distribute, and/or sell the Film, despite having actual or constructive notice of Plaintiffs' claims. Defendants, and each of them, continue to reproduce, distribute, and/or sell Plaintiffs' works without a license or other authority from Plaintiffs.

52.     In March 2023 through June 2023, Defendant Campbell was insisting that he had expended production funding over what was then believed by Plaintiffs, as represented by Defendant Campbell, to be just $100,000 from the Miracle Donor (now known to be $50,000 more) in the amount of $50,000 or $60,000 above the original anticipated budget of $100,000 and was demanding reimbursement for that before allowing the 66.66% gross profit distribution to be paid to the Plaintiffs pursuant to the Investment Agreement. A summary of the understanding between the parties by Plaintiffs' counsel Mike Arata on a March 31, 2023, call, Defendants Campbell and executives for Defendant BMG, is attached hereto as **Exhibit 12** and incorporated herein by this reference. Plaintiffs, unaware of the additional Undisclosed $50,000 Donation by the Miracle Donor, offered to let Defendants recoup actual documented/verifiable out-of-pocket expenses. Still, no such verification has been provided, and no review of the books has been agreed to by Defendants.

53.     After further telephone calls, regarding demands for the $50,000 or $60,000 that Defendant Campbell claimed he went out-of-pocket for, on May 1, 2023 he summarized these expenses in an email with a purported list of recoupable expenses he claimed was a "nonnegotiable number" despite the lack of the requisite standard backup documentation, of $157,750 which email is attached hereto as **Exhibit 13**, and incorporated herein by this reference. Again, no reference was made to the Undisclosed $50,000 Donation. Defendant Campbell also continued to ignore the fact that Plaintiffs were entitled to 66.66% of the gross revenues, *i.e.*,

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

there were no provisions in the Investment Agreement to deduct expenses or investments by either side to create net proceeds.

54. On June 19, 2023, Defendant Campbell made another email demand of Plaintiffs to recoup his purported out-of-pocket expenditures, stating in pertinent part: "Please find the requested THIRD-PARTY report containing the Verified Expenses for the film *Miracle at Manchester*. JCFilms Studios Production Expense Reimbursement is $61,780.00. As agreed in the contract, once the expenses are recovered the proceeds from the film will be spilt as agreed between all parties in the contract." This email is attached hereto as **Exhibit 14** and incorporated herein by this reference, with the "third party report containing the verified expenses" attached hereto as **Exhibit 15** and incorporated herein by this reference. On information and belief, this report was not created by an independent third-party but by a non-accountant, craft services employee of Defendant Campbell, with no verification whatsoever included.

55. Defendant Campbell, personally and on behalf of Defendant JC has further misrepresented the amount of the donation, stating it to be $100,000 and not the actual amount of $150,000 in an unserved complaint filed in the Harrison County West Virginia Circuit Court on February 27, 2025, against Plaintiffs Miracle at Manchester Foundation and Richard Newman at Paragraphs 6 and 24 therein. In the complaint at Paragraph 5, he also repeated the misrepresentation that he had expended $61,780 above the misrepresented $100,000 donation.

56. Furthermore, on information and belief, Defendants Campbell and BMC *dba* JC have padded the accounting to fraudulently try and extort nonexistent expenses from the revenues inclusive of the following: it was reported that actor Dean Cain was paid $7,000 for Cain to appear at the premiere—Cain never appeared; actor Eddie McClintock was paid $4,000 in cash for acting fees not the reported $20,000 (although he was paid $4,000 to direct) and did not receive any expense reimbursement despite the reported $2,500 reimbursement; the crew's

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

1  rental space was reported to be $3,000, when in actuality it was $1,500; and

2  Defendant Campbell stated that he paid editor Dan Farjardo $5,000 to edit but

3  reported paying him $15,000, further padding the expenses.

4      57.    Defendant Campbell's misappropriation of revenues has been aided

5  and abetted by BMG, which was placed on actual notice of Plaintiffs' 66.66%

6  ownership and distribution rights on March 31, 2023, when Attorney Michael Arata

7  provided BMG with a copy of the Investment Agreement. Despite this, BMG

8  continued to distribute the Film and transmit revenues solely to Campbell. After

9  further demands for its share of the revenues, inclusive of a February 2, 2024,

10  demand letter to BMG (**Exhibit 18**) setting forth numerous specific breaches by

11  Defendants Campbell, BMC, JC, and BMG issued a notice to the parties that it was

12  freezing all distribution of revenues effective April 29, 2024, until a resolution of

13  the dispute was achieved.

14      58.    Defendants' actions as aforesaid have caused Plaintiffs to suffer

15  significant monetary damages, including loss of profits, loss of royalties, loss of

16  business opportunities, loss of business goodwill, and damage to personal and

17  business reputation. As a result of Defendants' actions, the Foundation has been

18  deprived of substantial funds that would have been used to purchase hundreds of

19  iPads for pediatric cancer patients. Plaintiffs will continue to suffer further and

20  sustain irreparable damage unless Defendants are restrained and enjoined by this

21  Court.

22          **FIRST CAUSE OF ACTION**
           **BREACH OF WRITTEN CONTRACT**
23          **(Ratified Pre-Incorporation Agreement)**
24          *(As to the Campbell Defendants, JC, and BMC)*

25      59.    Plaintiffs incorporate by reference all preceding paragraphs as though

26  fully set forth herein.

27      60.    A valid and enforceable Investment Agreement exists between

28  Plaintiffs and Defendants Campbell, Heather Campbell, JC, and BMC under which

— 14 —

Plaintiffs was entitled to receive a regular accounting for plus a 66.66% share of the of gross revenues, retain 66.66% ownership and control over the copyright to the Film, a covenant that Defendants would not enter into a distribution agreement without Plaintiffs' approval and audit rights over the Defendants' books and records for the Film. This agreement was entered into before the corporation was incorporated, while the organization was in the process of formation.

61.    On November 28, 2022, following successful incorporation on November 17, 2022 (IRS confirmation, attached hereto as **Exhibit 16** and incorporated herein by this reference), Miracle, through its duly appointed Board of Directors, ratified and adopted the April 2022 Investment Agreement in a validly noticed and held board meeting. A true and correct copy of the Board resolution ratifying the Agreement is attached hereto as **Exhibit 17** and incorporated herein by this reference. Before that date, Plaintiffs had performed all executory obligations on their part.

62.    Following its ratification, Miracle undertook to continue to fully perform all conditions, covenants, and obligations required of it under the Investment Agreement, or such performance was excused.

63.    The Campbell Defendants, JC, and BMC breached the Investment Agreement by failing to account for and pay Plaintiffs' 66.66% share of the gross revenues for the Film, entering into a distribution agreement with BMG without authorization, claiming exclusive ownership by failing to include Plaintiffs' 66.66% share of the copyright registered in the sole name of Defendant JC, claiming exclusive copyright ownership of the screenplay despite having sold it to Plaintiffs for $1,000, and refusing to allow for an audit of the books and records for the Film.

64.    At all times, Defendants were aware that the Investment Agreement was entered into in the name of Plaintiffs' nonprofit and acted in reliance upon Plaintiff Miracle's corporate identity.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

65.    Defendants have refused to pay the compensation due, claiming that the entity was not legally incorporated at the time of the Investment Agreement and thus lacks standing to sue, notwithstanding the fact that they had full knowledge of its pre-incorporation contracting status.

66.    Plaintiffs have suffered damages as a result of Defendants' breaches.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED COVENANT OF**
**GOOD FAITH AND FAIR DEALING**
*(As to the Campbell Defendants, JC, and BMC)*

67.    Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

68.    As aforementioned, Plaintiffs and Defendants Campbell, Heather Campbell, JC, and BMC entered into the Investment Agreement, for which Plaintiffs performed all obligations required of them. Implied in the Agreement was a covenant that each party would act in good faith and deal fairly with the other and would not do anything to unfairly interfere with the right of the other to receive the benefits of the contract. This implied covenant of good faith and fair dealing arises by operation of law in every contract under California law.

69.    Defendants breached the implied covenant of good faith and fair dealing by engaging in conduct that unfairly frustrated Plaintiffs' right to receive the benefits of the Investment Agreement, including but not limited to: failing to account for and pay Plaintiffs' share of the gross revenues for the Film, entering into a distribution agreement with BMG without authorization, claiming exclusive ownership by failing to include Plaintiffs' 66.66% share of the copyright registered in the sole name of Defendant JC, refusing to allow for an audit of the books and records for the Film, misrepresenting and omitting material facts to induce Plaintiffs into contractual performance, acting arbitrarily, capriciously, and in bad faith in exercising contractual discretion, interfering with Plaintiffs' contractual

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

rights and opportunities and otherwise refusing to cooperate with Plaintiffs in
fulfilling the terms and purpose of the Investment Agreement.

70.    As a direct and proximate result of Defendants' breach of the implied
covenant of good faith and fair dealing, Plaintiffs have sustained damages in an
amount according to proof at trial, including but not limited to lost profits,
reputational harm, and consequential damages.

71.    Defendants' conduct was despicable and carried out with a willful and
conscious disregard of Plaintiffs' rights, and with fraud, oppression, or malice,
damaging Plaintiffs thereby and entitling Plaintiffs to an award of punitive damages
in accordance with Civil Code § 3294.

### THIRD CAUSE OF ACTION
### FRAUD
### (Intentional Misrepresentation and Concealment)
*(As to the Campbell Defendants, JC, and BMC)*

72.    Plaintiffs incorporate by reference all preceding paragraphs as though
fully set forth herein.

73.    In or about the first two weeks of July 2021, Defendant Campbell
represented to Richard Newman, who was speaking on behalf of Plaintiffs, that if
Richard Newman or Plaintiff Miracle provided Defendant Campbell $1,000, they
would own the screenplay to the Film. This was confirmed in an email from
Defendant Campbell on July 14, 2021 (**Exhibit 2**). In reliance upon this, Richard
Newman sent $1,000 by Venmo for ownership of the screenplay and the copyright
related thereto (**Exhibit 3**).

74.    Despite the representations in the preceding paragraph, on October 26,
2022, the U.S. Copyright Office received from Defendant Campbell the completed
copyright registration application for the "Dramatic Work and Music; or
Choreography" titled "Miracle at Manchester" (registration# PA0002396330).
Defendant Campbell submitted the copyright application, under the penalty of
perjury (18 U.S.C. § 1001), attesting that he was the owner and sole copyright

— 17 —

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

holder for the screenplay to the Film (**Exhibit 4**). Under the same oath, Defendant Campbell attested that he was the sole holder of the "Rights and Permissions" for the film, listing his name and the name and contact information of JC Films for related inquiries.

75.    On or about April 23, 2022, in the written Investment Agreement, Defendant Campbell, on behalf of Defendants JC and BMC, and each of them, made the following representations to Plaintiffs: they were to receive a regular accounting plus a 66.66% share of the of gross revenues, retain 66.66% ownership and control over the copyright to the Film, Defendants would not enter into a distribution agreement without approval and were providing audit rights over the Defendants' books and records for the Film.

76.    On multiple occasions, including but not limited to a conference call with attorney Michael Arata on behalf of Plaintiffs and Richard Newman on behalf of Plaintiff Miracle on March 31, 2023 with Defendant Campbell and representatives of BMG, Defendant Campbell, on behalf of Defendants JC and BMC, represented to Plaintiffs that he had only received a donation towards the production budget for the Film of $100,000 from the Miracle Donor provided by Plaintiffs and that he had to invest between $50,000 and $60,000 personally to produce the Film notwithstanding the budget which Defendant Campbell created and circulated after production, stating total expenses of $126,000.

77.    Then, on June 19, 2023, Defendant Campbell sent an email to attorney Michael Arata on behalf of Plaintiffs and Richard Newman on behalf of Plaintiff Miracle again stating the JC Films Studios Production Expense Reimbursement is $61,780, again concealing the undisclosed $50,000 donation and seeking to recoup that from the gross proceeds of the Film (**Exhibit 13**).

78.    At the time Defendant Campbell made these representations, Defendant Campbell knew the representations were false and made them with the

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

intent to deceive and defraud Plaintiffs and to induce Plaintiffs to act in reliance thereon.

79.     Plaintiffs are informed and believes and thereon alleges that Defendant Campbell also concealed and failed to disclose material facts known to Defendants that were necessary to make the representations not misleading, including but not limited to the fact that the Miracle Donor in actuality provided $150,000 (based on the Undisclosed $50,000 Donation) and that the true and actual budget of the Film was less than $100,000 as originally represented and that a significant amount of the actual $150,000 provided by the Miracle Donor was actually usurped by the Campbell Defendants along with all gross revenues from the Film as exploited by Defendants, 66.66% of which was to be provided to Plaintiffs.

80.     Plaintiffs, at the time said representations were made and at the time Plaintiffs took the actions herein alleged, were unaware of the falsity of Defendants' representations and the concealment of material facts and, in reliance on the truth of said representations, and on the assumption that Defendants had disclosed all material facts, acted as alleged herein, including but not limited to entering into the Investment Agreement, causing the Donation for the production budget with the Miracle Donor on Plaintiffs' behalf and providing the $1,000 for the purchase of the screenplay for the Film.

81.     Plaintiffs are informed and believe, and therefore on information and belief, allege that the Campbell Defendants have engaged in a recurring pattern of fraudulent solicitations in connection with faith-based film productions, evidencing a calculated scheme to defraud investors under the guise of religious or inspirational messaging. These include, but are not limited to, the following.

82.     Plaintiffs are informed and believe and therefore on information and belief allege that the Campbell Defendants jointly solicited loans, investments, and donations from their film club based in Phoenix in late March 2021, for the represented purpose of bringing a film production to Phoenix entitled "Naughty or

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

Nice." The money, including that from Beverly Naught and many other lenders or donors at $2,500 each, totaling about $22,500 for the night's event, was never used to produce this film but instead was used for other purposes, with none of the money being returned. Lynn Valera of the Phoenix club also made a $15,000 loan to the Campbell Defendants who have yet to repay any of it.

83.    Plaintiffs are informed and believe and therefore on information and belief allege that the Campbell Defendants utilized a "SQUARE" credit card device to take donations supposedly for the nonprofit related to venues including but not limited to movie streaming, movie ticket sales and merchandise which instead went directly to a personal account for the Campbell Defendants.

84.    Plaintiffs are informed and believe and therefore on information and belief allege that the Campbell Defendants took a loan in or about July 2021 from Lew Sherwood the amount of between $30,000 and $40,000 which was purported to be the production budget for a film called "Halloween Heroes" which was actually made for much less and generated profits. Sherwood was to receive 50% of the gross profits, which has not yet occurred. Production costs were padded, including the Campbell Defendants requesting Bobby Lacer to submit a fake $20,000 invoice, which he refused to do. Lacer was promised compensation for revising the screenplay but was never paid.

85.    Plaintiffs are informed and believe and therefore on information and belief allege that on or about November 2021, the Campbell Defendants took a loan from Tom Lareseca in the amount of $50,000 which was purported to be the production budget for a film called "I Can't Breathe" which was actually made for much less. Lareseca was never repaid. Nonetheless Defendant Campbell charged him another $10,000 to "buy back" the film from him and instead of relinquishing title has continued to profit from streaming it on their website.

86.    Plaintiffs are informed and believe, and therefore, on information and belief, allege that the Campbell Defendants use the nonprofit Defendant JC to

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

receive donations, which are then passed through to their personal accounts.
Typically, they pay for everything with cash to avoid leaving a paper trail, while
fraudulently failing to disclose revenues in this and their other nonprofits. For
instance, they stated in their 2021 IRS nonprofit filings that gross receipts were "not
greater than $50,000" while producing twelve movies in that year with an average
budget of what should have been reportable donations of at least $50,000 per film.
Those films were released and made revenues in excess of the donations received
by Defendants.

87.    Plaintiffs are informed and believe, and therefore on information and
belief, allege that a 12-year-old Tennessee boy with a rare form of brain cancer
named Regen Morris would launch the Rootin' for Regen movement. People
shaved their heads, rode motorcycles, and sent prayers and pictures from all over.
Regen passed away on Christmas Day 2013. In or about March 2015, Defendant
Campbell solicited loans and investments from Regen's supporters and parents,
Dan and Tishia Morris donated $5,000 initially and then more, to produce the
"Rootin' for Regen" movie. The movie was never produced, and the Morris family
not only never received their money back from Defendant Campbell but also had to
agree to repay a $10,000 investor whose loan was defaulted on by Defendant
Campbell.

88.    Plaintiffs are informed and believe and therefore on information and
belief allege that on or about March 25, 2022, the Campbell Defendants, at a
premier for their movie at Crossroads Church in Mansfield Ohio, "Chosen," about
the struggles of foster children, solicited donations purportedly to purchase items to
create premium duffel bags full of essential items to hand out to local foster
children. They were to spend $100 each on the duffel bags. $10,000 was raised to
purchase 100 high-quality duffel bags. $7,500 was provided by Mike Lombardi at
the suggestion of Plaintiff Miracle founder Richard Newman. Of these 100
purported premium duffel bags, only eight were delivered, and not the hundred

— 21 —

1   dollars per quality bag, but instead just eight cheap bags purchased from the Dollar

2   Store, mostly containing balloons. Richard Newman was compelled to repay Mike

3   Lombardi out of shame and remorse for introducing him to Defendant Campbell.

4         89.    Plaintiffs are informed and believe and therefore on information and

5   belief allege that the Campbells entered into an agreement on August 26, 2024 with

6   Michelle Chynoweth to produce a film based on her book, "The Jealous Son" with

7   Defendant Heather Campbell providing a budget in the amount of $131,350 for

8   which Chynoweth was to co-own the film with Defendant JC and share 50% of the

9   revenues after recoupment of the investment. Defendant Campbell submitted a

10  "Micro Budget Project Agreement" to SAG, indicating the budget was $20,000 or

11  less. This is a common practice of Defendants. The actress who was to play the lead

12  subsequently stated that she would not work on a project involving Defendant

13  Campbell. Based upon false information provided to SAG and "continuous

14  dishonest behavior" by Defendant Campbell, Chynoweth elected to treat the

15  contract as abandoned and requested the return of her investment, which Campbell

16  refused. Chynoweth filed a complaint against Defendants Campbell and JC in

17  Maryland, receiving a judgment in the requested amount of $30,000 against both

18  parties. No part of that judgment has been satisfied.

19        90.    These prior acts, substantially similar in form and execution to the

20  fraud perpetrated upon Plaintiffs, demonstrate the Campbell Defendants' intent to

21  deceive, knowledge of the falsity of their statements, and an absence of mistake.

22  Defendants' repeated misuse of faith-based themes to engender trust and elicit

23  investment and donations, which are then diverted for personal use, underscores a

24  deliberate and fraudulent business practice.

25        91.    Plaintiffs' reliance on Defendants' misrepresentations and concealment

26  was justifiable and reasonable under the circumstances.

27        92.    As a direct and proximate result of Defendants' fraud and

28  concealment, Plaintiffs have sustained damages in an amount according to proof at

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

trial, including but not limited to expenditures made, lost profits, ownership of the copyright to the screenplay, the majority share of the copyright to the Film, and reputational harm.

93.    Defendants' conduct was willful, malicious, and oppressive, and was undertaken with the intent to injure and defraud Plaintiffs. Plaintiffs are therefore entitled to an award of punitive and exemplary damages pursuant to Civil Code § 3294.

**FOURTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**
*(As to the Campbell Defendants, JC, and BMC)*

94.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

95.    Defendants made the above false representations or concealments in the Third Cause of Action without reasonable grounds for believing them to be true.

96.    Plaintiffs' reliance on Defendants' misrepresentations and concealment was justifiable and reasonable under the circumstances, and they were harmed as a result.

97.    Plaintiffs have sustained damages in an amount according to proof at trial, including but not limited to expenditures made, lost profits, ownership of the copyright to the screenplay, the majority share of the copyright to the Film, and reputational harm.

**FIFTH CAUSE OF ACTION**
**CONVERSION**
*(Against all Defendants)*

98.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

99.    At all relevant times, Plaintiffs were the rightful owner of, and had the legal right to possess and receive, certain royalty payments derived from the exploitation of the Film pursuant to the Investment Agreement, as well as the sole

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

1    owner copyright to the screenplay and the majority owner of the copyright to the

2    Film, which all other Defendants had written notice of.

3          100.   Defendants, and each of them, wrongfully exercised dominion and

4    control over said royalty payments by collecting, withholding, and failing to remit

5    such payments to Plaintiffs. Defendants Campbell and JC wrongfully exercised

6    dominion and control over the copyright to the screenplay and the majority

7    ownership of the copyright to the Film. Said actions were undertaken intentionally

8    and without Plaintiffs' initial knowledge, and thereafter without consent or

9    authorization.

10         101.   Defendants' wrongful conduct was inconsistent with Plaintiffs'

11   ownership and contractual rights to receive said royalty payments, and to exploit

12   the copyright to the screenplay and the Film, and Defendants had no legal

13   justification or privilege to retain the funds or the copyrights.

14         102.   Plaintiffs have demanded payment of the royalty amounts due and

15   relinquishment of the copyrights. Still, Defendants have failed and refused, and

16   continue to fail and refuse, to deliver such funds to Plaintiffs.

17         103.   As a direct and proximate result of Defendants' acts as alleged herein,

18   Plaintiffs have been damaged in an amount to be proven at trial, together with

19   interest thereon at the legal rate.

20         104.   The aforementioned conduct of Defendants was willful, malicious, and

21   oppressive, and justifies the imposition of punitive and exemplary damages in an

22   amount to be determined according to the proof at trial, pursuant to Civil Code

23   § 3294.

24                        **SIXTH CAUSE OF ACTION**
                          **BREACH OF FIDUCIARY DUTY**
25                *(As to the Campbell Defendants, JC, and BMC)*

26         105.   Plaintiffs incorporate by reference all preceding paragraphs as though

27   fully set forth herein.

28

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

106.  At all relevant times, Plaintiffs entrusted Defendants Campbell, JC, and BMC with significant responsibilities and discretion in connection with the development, production, and exploitation of a motion picture based on Plaintiff Newman's personal life story and/or underlying proprietary material. Plaintiffs also provided financial investment in the development and production of said motion picture.

107.  By reason of said entrustment, joint undertaking, and mutual reliance, a fiduciary relationship arose between Plaintiffs and Defendants Campbell, JC, and BMC. Said relationship imposed upon Defendants Campbell, JC, and BMC fiduciary duties of loyalty, good faith, full disclosure, fair dealing, and the obligation to act in Plaintiffs' best interest, including the duty to accurately account for and remit royalties or revenue shares arising from exploitation of the motion picture.

108.  Defendants Campbell, JC, and BMC breached their fiduciary duties by, among other things:

a.  Failing to provide regular or accurate reporting of revenues generated from the distribution or licensing of the Film;

b.  Concealing or failing to disclose material information regarding distribution agreements, licensing deals, or exploitation revenue;

c.  Failing and refusing to remit to Plaintiffs any portion of the revenues or royalties to which Plaintiffs were entitled; and

d.  Treating the property and interests in but not limited to the copyright of the Film, of Plaintiffs as their own, and acting for their self-interest at Plaintiffs' expense.

109.  As a direct and proximate result of Defendants Campbell, JC, and BMC's breach of fiduciary duties, Plaintiffs have been damaged in an amount to be proven at trial, plus interest thereon at the legal rate.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

110.   Defendants Campbell, JC, and BMC's conduct was willful, fraudulent, oppressive, and malicious. It was carried out with conscious disregard for the rights and interests of Plaintiffs, thereby justifying the imposition of punitive and exemplary damages in an amount to be determined at trial pursuant to Civil Code § 3294.

## SEVENTH CAUSE OF ACTION
## MISAPPROPRIATION OF RIGHT OF PUBLICITY
*(As to All Defendants)*

111.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

112.   Plaintiffs include an individual and a charitable foundation whose name, identity, likeness, life story, and persona have commercial and reputational value and are entitled to protection under both the common law and California Civil Code § 3344.

113.   Without the authorization, or consent of Plaintiffs, Defendants, and each of them, knowingly and willfully used Plaintiffs' names, likenesses, and personal life stories, including the name of Plaintiff Newman and branding of Plaintiff Miracle's Foundation, in connection with the advertising, promotion, marketing, and/or distribution of the Film.

114.   Defendants undertook the unauthorized use of Plaintiffs' identities and stories for the purpose of soliciting purchases, increasing commercial value, and promoting their own goods, services, or business interests, and were not protected by any statutory or constitutional privilege.

115.   Defendants' misappropriation of Plaintiffs' identities was done without any written or oral consent, and Plaintiffs were not compensated for such use in any manner, despite their central role in the subject matter of the film and its derivative works and contractual right to receive a 66.66% ownership and gross revenue interest in the proceeds of the film.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

116.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered injury, including but not limited to emotional distress, reputational harm, loss of control over their identities and stories, and the loss of commercial opportunities associated with such rights, in an amount to be proven at trial.

117.    Defendants' acts were intentional, oppressive, fraudulent, and malicious, justifying the award of punitive and exemplary damages pursuant to Civil Code § 3294.

118.    Plaintiffs also seek statutory damages under Civil Code § 3344, including attorneys' fees and any other relief the Court deems proper.

## EIGHTH CAUSE OF ACTION
### UNFAIR COMPETITION (Bus. & Prof. Code § 17200)
*(As to All Defendants)*

119.    Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

120.    Defendants, and each of them, engaged in unlawful, unfair, and fraudulent business acts and practices, pursuant to California Business and Professions Code § 17200, et seq. (the "Unfair Competition Law" or "UCL") in connection with their unauthorized and deceptive use of Plaintiffs' names, likenesses, life stories, and the identity and branding of Plaintiff Miracle, for the purpose of marketing, promoting, and exploiting a motion picture and Defendants JC and Campbell's nonprofit, JC, all without Plaintiffs' knowledge, consent, or compensation.

121.    The conduct of Defendants constitutes an "unlawful" business practice within the meaning of the UCL because it violated multiple legal duties, including but not limited to:

    a. The common law and statutory right of publicity (Civil Code § 3344);

    b. Fiduciary duties owed to Plaintiffs;

— 27 —

c. Duties arising from contracts and agreements between the parties; and

d. Civil Code provisions prohibiting conversion and fraud.

122.   The conduct of Defendants also constitutes an "unfair" business practice in that it was immoral, unethical, oppressive, unscrupulous, and caused substantial injury to Plaintiffs, including economic loss, reputational harm, and loss of control over their identities and charitable mission.

123.   The conduct of Defendants further constitutes a "fraudulent" business practice within the meaning of the UCL in that it was likely to deceive the public into believing that Defendants' film and promotional materials were approved by, affiliated with, or sponsored by Plaintiffs and their foundation, and that Defendants had the right to exploit Plaintiffs' stories and charitable identity.

124.   As a direct and proximate result of the acts and omissions of Defendants, Plaintiffs have suffered injury in fact and lost money or property, including but not limited to their entitlement to compensation, royalties, investment return, and the right to control the use of their identities and brand.

125.   Plaintiffs seek restitution, disgorgement of profits, and injunctive relief pursuant to Business and Professions Code §§ 17203 and 17204, enjoining Defendants from continuing the unfair, unlawful, and fraudulent conduct alleged herein, and requiring them to restore to Plaintiffs all funds and property wrongfully acquired through such conduct.

## NINTH CAUSE OF ACTION
## MISAPPROPRIATION OF NAME (Common Law)
### *(As to the Campbell Defendants, JC, and BMC)*

126.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

127.   Plaintiffs own a protectable interest in the name and reputation of Plaintiff Miracle.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

128.   The Campbell Defendants, JC, and BMC used Plaintiffs' name without consent to mislead the public and divert support and credibility.

129.   Plaintiffs include a charitable foundation whose name and identity have a unique reputational and emotional significance and commercial value.

130.   The Campbell Defendants, JC, and BMC, and each of them, knowingly and intentionally used the name "Miracle at Manchester Foundation" in connection with the advertising, marketing, distribution, and public promotion of a motion picture and related fundraising or commercial efforts.

131.   Said use by the Campbell Defendants, JC, and BMC was undertaken without the knowledge, consent, or authorization of Plaintiffs. Plaintiffs expressly withdrew permission to use their name or to hold themselves out as having any affiliation with Plaintiffs or their charitable foundation prior to changing the name of their Ohio nonprofit to Plaintiffs' name.

132.   The unauthorized use of Plaintiffs' name was intended to derive commercial and promotional benefits, including raising funds, enhancing the marketability of the film, and generating goodwill and legitimacy for the Campbell Defendants, JC, and BMC's ventures, including fundraising for their own nonprofit, JC. However, IRS records for the Campbell Defendants' 501c3 entity, OHIO HELPING HANDS INC. (EIN: 87-3289615), does not reflect a name change to MIRACLE AT MANCHESTER FOUNDATION INC., but rather to a different entity name, END THE WAIT FOUNDATION INC., using the same EIN.

133.   The Campbell Defendants, JC, and BMC's acts were not incidental or transformative in nature, but rather intended to mislead the public into believing that Plaintiffs were affiliated with or had endorsed the Film and its distribution, and to exploit the goodwill associated with the foundation and Plaintiffs' personal reputations.

134.   As a direct and proximate result of the Campbell Defendants, JC, and BMCs' misappropriation of Plaintiffs' names, Plaintiffs have suffered injury,

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

including but not limited to reputational harm, emotional distress, and loss of
control over their identities and the charitable mission associated with Plaintiff
Miracle.

135.   The acts of the Campbell Defendants, JC, and BMC were willful,
fraudulent, malicious, and oppressive, thereby entitling Plaintiffs to punitive and
exemplary damages pursuant to Civil Code § 3294.

**TENTH CAUSE OF ACTION**
**PASSING OFF / FALSE ASSOCIATION**
**(Common Law of California and Section 43(a) of the Lanham Act (15 U.S.C.
§ 1125(a))**
*(As to the Campbell Defendants, JC, and BMC)*

136.   Plaintiffs incorporate by reference all preceding paragraphs as though
fully set forth herein.

137.   Plaintiffs, including individuals and a charitable organization known as
Miracle Children's Foundation, formerly Miracle at Manchester Foundation, have
cultivated goodwill, trust, and public recognition associated with their identities and
charitable mission, including in connection with a widely known life story
involving miraculous recovery and community support.

138.   The Campbell Defendants, JC, and BMC knowingly used the name
"Miracle at Manchester Foundation" and other identifying names and information
associated with Plaintiffs in connection with the promotion, advertising,
distribution, and fundraising related to the Film and related media, and fundraising
efforts benefiting their nonprofit, JC.

139.   Such use was likely to, and did in fact, cause confusion or mistake,
and/or deceived the public into believing that Plaintiffs had approved, sponsored, or
were affiliated with the Campbell Defendants, JC, and BMC, their motion pictures,
or their fundraising efforts for their nonprofit, JC or their other nonprofits. The
Campbell Defendants, JC, and BMCs' conduct constitutes unlawful "passing off"

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

and false association under the common law of California and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

140.   Plaintiffs ultimately did not authorize or consent to the use of their foundation name, identity, or charitable foundation's brand in connection with the Film, fundraising, or distribution activities of JC and their related nonprofits.

141.   As a direct and proximate result of the Campbell Defendants, JC, and BMCs' unlawful conduct, Plaintiff Miracle has suffered and will continue to suffer damage to its reputation, public goodwill, and ability to control the use and purpose of their names and identities, in an amount to be determined at trial.

142.   The Campbell Defendants, JC, and BMC acted knowingly, willfully, and with malice, oppression, and fraud, justifying an award of punitive and exemplary damages under California Civil Code § 3294, as well as injunctive relief, restitution, and any available remedies under 15 U.S.C. §§ 1116 and 1117.

## ELEVENTH CAUSE OF ACTION
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (As to the Campbell Defendants, JC, and BMC)

143.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

144.   Plaintiffs had existing and/or prospective economic relationships with multiple third parties in the charitable and philanthropic sectors, including potential investors, donors, and commercial media partners, which had a probability of resulting in future economic benefits to Plaintiffs.

145.   Defendants Campbell, JC, and BMC knew of Plaintiffs' public reputation, ongoing charitable operations, and commercial prospects related to the real-life story underlying the Film, including the goodwill associated with the Miracle at Manchester Foundation and Plaintiff Newman.

146.   Defendants Campbell, JC, and BMC intentionally and wrongfully interfered with those relationships by misappropriating Plaintiffs' names, identity,

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

and foundation branding, and using them in the advertising, promotion, and distribution of the Film and related fundraising efforts, all without Plaintiffs' ultimate consent and in violation of California law, including common law misappropriation, right of publicity (Civil Code § 3344), unfair competition (Bus. & Prof. Code § 17200), and false association under the Lanham Act.

147. As a direct and foreseeable result of the Campbell Defendants, JC, and BMCs' wrongful conduct, third parties were misled into believing that Plaintiffs endorsed or participated in Defendants' nonprofit, thereby diminishing Plaintiffs' ability to control their story and charitable mission and causing actual disruption of existing and potential economic relationships with donors inclusive of the Miracle Donor, supporters, collaborators, and media affiliations.

148. Plaintiffs suffered economic harm in the form of lost donations, lost business opportunities, reputational injury, and the dilution of their marketability, all in an amount to be proven at trial.

149. Defendants' conduct was intentional, malicious, fraudulent, and oppressive, justifying the imposition of punitive and exemplary damages under Civil Code § 3294.

## TWELFTH CAUSE OF ACTION
### UNJUST ENRICHMENT/COMMON COUNT: MONEY HAD AND RECEIVED
*(As to All Defendants)*

150. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

151. Within the last four years, Defendants, and each of them, received money from the distribution and exploitation of the Film.

152. Said money, or a portion thereof, was received and held by Defendants, and each of them, for the benefit of Plaintiffs pursuant to a written Investment Agreement and based on Plaintiffs' contractual right to receive 66.66% of the gross revenues from the Film.

153.   Defendants, and each of them, have failed and refused, and continue to fail and refuse, to remit said monies to Plaintiffs, despite demands.

154.   The money received and retained by Defendants and each of them, belongs to Plaintiffs, and under principles of equity and good conscience, Defendants should not be permitted to retain the same.

155.   As a direct and proximate result of Defendants' conduct, Plaintiffs have been damaged in an amount to be proven at trial, plus interest thereon at the legal rate.

## THIRTEENTH CAUSE OF ACTION
## CONSTRUCTIVE TRUST
### *(As to All Defendants)*

156.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

157.   At all relevant times, Plaintiffs had a legally cognizable and equitable interest in certain specific property, including but not limited to:

   a. A 66.66% ownership interest in the copyright to the Film;

   b. A 66.66% ownership interest in all gross revenues derived from the distribution and exploitation of the Film in all media and territories worldwide and in perpetuity; and

   c. A right to ownership of the screenplay to the Film pursuant to a written agreement and payment of consideration.

158.   Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, wrongfully obtained or retained legal title to the above-described property through fraud, concealment, breach of fiduciary duty, misrepresentation, and/or unjust enrichment.

159.   Specifically, Defendants:

   a. Registered the copyright in the Film and/or the screenplay solely in the name of Defendant JC or its affiliates, excluding

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

Plaintiffs' sole interest in the screenplay and majority interest in
the Film;

   b.  Collected gross revenues from the exploitation of the Film but
failed to account for or distribute Plaintiffs' rightful 66.66%
share; and

   c.  Denied Plaintiffs access to books and records, and refused to
recognize Plaintiffs' contractual and equitable interests.

160.   As a result, Defendants are unjustly enriched and hold the subject
property under circumstances in which it would be inequitable and unjust for them
to retain it.

161.   Plaintiffs therefore seek the imposition of a constructive trust over:

   a.  All rights, titles, and interests in the copyright to the screenplay
and a controlling 66.66% interest in the copyright to the Film by
the Campbell Defendants and JC; and

   b.  66.66% of all gross revenues, accounts, or proceeds derived
from the distribution or exploitation of the Film, including any
monies currently in Defendants' possession or control.

162.   Plaintiffs further request that the Court declare Defendants as
constructive trustees over the identified property, and that said property be
transferred to Plaintiffs to prevent unjust enrichment and protect Plaintiffs' legal
and equitable rights.

## FOURTEENTH CAUSE OF ACTION
### ACCOUNTING
*(As to All Defendants)*

163.   Plaintiffs incorporate by reference all preceding paragraphs as though
fully set forth herein.

164.   Plaintiffs entered into a written Investment Agreement with the
Campbell Defendants, JC, and BMC, concerning the development, production, and
exploitation of the Film.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

165.   Pursuant to said Investment Agreement, Plaintiffs are entitled to receive 66.66% of all gross revenues generated from the distribution and exploitation of the Film in all media, throughout the world, and in perpetuity.

166.   Defendants, and each of them, have received monies from the commercial exploitation of the Film, including but not limited to licensing fees, royalties, streaming revenue, and other sources of income, which are subject to Plaintiffs' contractual revenue share.

167.   By virtue of the parties' agreement and the entrustment of control over financial operations to Defendants, a legal and equitable relationship exists that entitles Plaintiffs to an accounting of all revenues, expenditures, and profits relating to the Film.

168.   Plaintiffs are informed and believe and thereon allege that substantial sums of money have been received by Defendants, and each of them but Defendants have failed and refused to provide any meaningful or accurate accounting or to remit the sums owed to Plaintiffs under the Investment Agreement.

169.   The amounts due and payable to Plaintiffs are unknown to Plaintiffs and cannot be ascertained without a full and complete accounting of Defendants' financial records and transactions relating to the Film.

170.   Plaintiffs therefore seek an order requiring Defendants to render a full and complete accounting of all monies received and disbursed in connection with the Film, and to pay over to Plaintiffs all amounts found to be due as a result of said accounting.

**FIFTEENTH CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)**
*(As to the Campbell Defendants, JC, and BMC)*

171.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

172.   Plaintiffs are the authors and rightful owners of an original screenplay entitled "Miracle at Manchester" and 66.66% majority owner of the motion picture

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

based thereon (the "Work"). The Work is an original creation fixed in a tangible medium of expression and is subject to copyright protection under the Copyright Act, 17 U.S.C. § 101 et seq.

173.    The copyright to the screenplay has been registered with the United States Copyright Office under Registration No. PA0002396330 on or about October 26, 2022, solely in the name of Defendant Campbell (**Exhibit 4**).

174.    Pursuant to 17 U.S.C. § 106, Plaintiffs hold the majority exclusive rights to reproduce, prepare derivative works, distribute, publicly perform, and display the Work.

175.    Defendants, and each of them, without Plaintiffs' knowledge or authorization, have willfully and unlawfully copied, used, reproduced, distributed, displayed, and/or created derivative works based upon the Work, including but not limited to producing and exploiting a motion picture based on the screenplay and/or registering the copyright solely in the name of Defendant Campbell and claiming full copyright ownership to the Film in the Film credits.

176.    As a direct and proximate result of Defendants' acts of infringement, Plaintiffs have suffered actual damages, including lost revenue, reputational harm, and dilution of the value of the Work, in an amount to be determined at trial.

177.    Plaintiffs are entitled to recover statutory damages pursuant to 17 U.S.C. § 504(c), or, in the alternative, actual damages and any profits of Defendants attributable to the infringement.

178.    Plaintiffs are further entitled to preliminary and permanent injunctive relief under 17 U.S.C. § 502, impoundment under § 503, and an award of costs and attorneys' fees under 17 U.S.C. § 505.

179.    Defendants' acts were willful, intentional, and carried out with reckless disregard of Plaintiffs' rights, justifying enhanced statutory damages.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

## SIXTEENTH CAUSE OF ACTION
### INJUNCTIVE RELIEF
*(As to All Defendants)*

180.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

181.   Plaintiffs are the owners of valuable intellectual property rights and contractual rights relating to the Film, including but not limited to:

a. A 66.66% ownership interest in the copyright in the Film and 100% ownership in the underlying screenplay; and

b. A contractual right to receive 66.66% of all gross revenues derived from the exploitation of the Film;

182.   Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, are continuing to exploit the Film and collect revenue from its distribution in violation of Plaintiffs' legal and contractual rights, including through unauthorized licensing agreements and public representations of sole ownership.

183.   Defendants have further used and continue to use Plaintiffs' names, likenesses, or charitable identity to market the Film and related ventures without Plaintiffs' consent, thereby causing ongoing reputational harm and public confusion.

184.   As a result of Defendants' wrongful conduct, Plaintiffs face imminent and irreparable injury in the form of:

a. Continued diversion of funds rightfully owed to Plaintiffs; and

b. Loss of control over their intellectual property and identity;

185.   Plaintiffs have no adequate remedy at law, as monetary damages alone cannot fully compensate for the loss of control over copyrighted material, identity, nor can they reverse reputational harm once inflicted.

186.   Plaintiffs are informed and believe and thereon allege that unless enjoined by this Court, Defendants will continue to exploit the Film, use Plaintiffs'

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

identities and intellectual property, and retain revenues rightfully belonging to Plaintiffs.

187.   Plaintiffs therefore seek a preliminary and permanent injunction restraining Defendants, and each of them, from:

      a. Exploiting or distributing the Film in any manner without accounting and payment of Plaintiffs' revenue share; and

      b. Representing themselves as sole owners of the copyright in the Film or screenplay; and

      c. Failing to provide Plaintiffs with a full accounting and to pay all gross revenues to which Plaintiffs are contractually entitled.

188.   Plaintiffs further seek such other equitable relief as the Court deems just and proper, including impoundment of infringing materials and disgorgement of wrongfully obtained profits.

## SEVENTEENTH CAUSE OF ACTION
### CIVIL CONSPIRACY TO COMMIT BREACH OF CONTRACT AND MISAPPROPRIATION
*(As to All Defendants)*

189.   Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

190.   Plaintiffs are parties to a written Investment Agreement relating to the development, production, and exploitation of the Film, under which Plaintiffs retained a 66.66% ownership interest in the copyright to the Film and were entitled to receive 66.66% of all gross revenues derived from the Film's exploitation, in all media, throughout the world, in perpetuity.

191.   Plaintiffs also retained proprietary and statutory rights in the name, identity, likeness, and brand of the "Miracle at Manchester Foundation," which was wrongfully used by Defendants in the marketing and distribution of the Film and related fundraising efforts without authorization.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

192.   Plaintiffs are informed and believe and thereon allege that Defendants, and each of them, knowingly entered into an agreement or understanding—whether formal or informal—to deprive Plaintiffs of their contractual rights unlawfully and to misappropriate Plaintiffs' copyrighted works and foundation identity for Defendants' own financial gain.

193.   In furtherance of said conspiracy, Defendants performed one or more overt acts, including but not limited to:

     a. Registering the copyright to the Film and/or screenplay solely in the name of Defendant Campbell and JC, excluding Plaintiffs' 66.66% ownership interest in the film and the 100% interest in the screenplay;

     b. Entering into undisclosed distribution agreements and collecting revenue from the Film without accounting or payment to Plaintiffs;

     c. Using the "Miracle at Manchester Foundation" name in promotional, commercial, and fundraising materials after Plaintiffs had withdrawn consent; and

     d. Concealing the existence of third-party donations and revenue inflows to withhold rightful shares from Plaintiffs.

194.   Defendant BMG knew that the other named Defendants did not have the rights to use Plaintiff Newman's story, name, and image, yet they nonetheless proceeded to distribute the film, ignoring that lack of documentation, even after they were provided notice of such defect.

195.   Each of the Defendants had knowledge of the wrongful acts being committed and intended to participate in and further the conspiracy by actively assisting, encouraging, or ratifying the conduct of their co-conspirators.

196.   Defendants' conduct constitutes a civil conspiracy to commit:

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

a. Breach of contract, including breach of revenue-sharing and audit obligations;

b. Misappropriation of name, likeness, and charitable identity;

c. Conversion of royalty payments owed to Plaintiffs; and

d. Fraudulent concealment of revenues and contractually material facts.

197. As a direct and proximate result of the conspiracy and wrongful acts committed in furtherance thereof, Plaintiffs have suffered substantial harm, including lost profits, loss of ownership control, reputational damage, and emotional distress, in an amount to be proven at trial.

198. The acts alleged herein were willful, malicious, oppressive, and undertaken with a conscious disregard for Plaintiffs' rights, entitling Plaintiffs to punitive and exemplary damages under Civil Code § 3294.

## EIGHTEENTH CAUSE OF ACTION
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a)(1)(A))
*(As to the Campbell Defendants and JC)*

199. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

200. Plaintiffs, including an individual and a charitable foundation formerly known as "Miracle at Manchester Foundation," had developed and maintained a distinct identity, goodwill, and public association with a charitable mission based on a widely known real-life story involving recovery and community support.

201. The public recognized the name "Miracle at Manchester" and associated branding as identifiers of Plaintiffs' foundation, charitable efforts, and life story. These identifiers are inherently distinctive and serve as source identifiers in commerce.

202. The Campbell Defendants and JC, without Plaintiffs' authorization, used the "Miracle at Manchester Foundation" name and associated identifiers in

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

commerce to market, promote, and distribute a motion picture and to solicit donations and support for their own nonprofit and commercial ventures.

203. Defendants' use of Plaintiffs' foundation name and identity falsely implied endorsement, sponsorship, and affiliation by Plaintiffs, and constitutes a false designation of origin within the meaning of Section 43(a)(1)(A) of the Lanham Act (15 U.S.C. § 1125(a)(1)(A)).

204. Defendants' conduct was likely to, and did in fact, cause confusion, mistake, and deception among members of the public, including but not limited to viewers, donors, and charitable supporters, as to the affiliation, origin, or sponsorship of the film and fundraising activities.

205. Plaintiffs did not authorize, consent to, or approve Defendants' use of their name, brand, or charitable identity and withdrew any prior limited permission that may have existed. Defendants continued their conduct despite actual knowledge of Plaintiffs' objection.

206. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered irreparable harm to their goodwill, reputation, and public identity, and have been damaged in an amount to be proven at trial.

207. Plaintiffs are entitled to injunctive relief to prevent further misrepresentation and to prohibit Defendants from using Plaintiffs' names or likenesses in any commercial or fundraising capacity.

208. Plaintiffs are further entitled to disgorgement of profits, compensatory damages, corrective advertising, and attorneys' fees and costs pursuant to 15 U.S.C. §§ 1116, 1117, and applicable equitable principles.

## NINETEENTH CAUSE OF ACTION
### DECLARATORY RELIEF
### (Copyright Ownership/Gross Profit Entitlement)
*(As to All Defendants)*

209. Plaintiffs incorporate by reference all preceding paragraphs as though fully set forth herein.

— 41 —

210. An actual and present controversy exists between Plaintiffs and Defendants concerning their respective rights and obligations pursuant to the Investment Agreement and the screenplay acquisition agreement, regarding the ownership of copyrights and revenue interests in connection with the Film and the underlying screenplay thereto (the "Screenplay").

211. Plaintiffs are informed and believe and thereon allege that they are entitled to the following rights:

    a. Ownership of the copyright in the Screenplay by virtue of contractual acquisition;

    b. A 66.66% majority ownership interest in the copyright to the completed Film pursuant to the written Investment Agreement and related communications; and

    c. A perpetual, irrevocable right to receive 66.66% of all gross revenues derived from the distribution and exploitation of the Film in any and all media, formats, and territories throughout the world.

212. Defendants, and each of them, deny these rights and assert inconsistent and adverse claims, including but not limited to:

    a. Asserting sole ownership of the copyright in the Screenplay and the Film;

    b. Registering the copyright to the Film and/or Screenplay solely in the name of Defendant JC without acknowledgment of Plaintiffs' ownership share; and

    c. Failing and refusing to provide accountings or payments to Plaintiffs in accordance with their 66.66% gross revenue interest.

213. Plaintiffs contend that the parties' rights and obligations are governed by the Investment Agreement and applicable copyright law, and that Defendants'

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

conduct gives rise to a justiciable controversy over ownership and entitlement to proceeds.

214.   Plaintiffs desire and are entitled to a judicial declaration pursuant to Code of Civil Procedure § 1060 that:

      a. Plaintiffs are the rightful owners of the copyright in the Screenplay;

      b. Plaintiffs own a 66.66% share of the copyright in the completed Film; and

      c. Plaintiffs are entitled to receive 66.66% of all gross revenues from the distribution and exploitation of the Film in all media and territories in perpetuity.

215.   A declaration of rights is necessary and proper at this time to resolve the legal dispute and prevent further harm to Plaintiffs' intellectual property and financial interests.

216.   Plaintiffs accordingly request that the Court issue a judgment declaring the rights of the parties as alleged above.

## TWENTIETH CAUSE OF ACTION
### DECLARATORY RELIEF
### (Corporation by Estoppel)
*(As to the Campbell Defendants and JC)*

217.   At all times during the negotiation and execution of the Agreement, Defendants knew that Miracle was acting in its corporate capacity and that it was in the process of incorporation as a nonprofit charitable organization. Defendants accepted this status without objection and treated Miracle as a corporation.

218.   Defendants performed under the Investment Agreement by producing the Film, after accepting the benefits thereof, including but not limited to being provided $150,000 behalf of Plaintiff Miracle for production funding, receiving 33.33% ownership interest in the copyright to the Film and the right to receive 33.33% of the gross receipts of the Film.

— 43 —

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

219.    On November 17, 2022, Miracle was formally incorporated as a California nonprofit corporation. On November 28, 2022, Miracle's duly constituted Board of Directors ratified and adopted the Investment Agreement in a formal board meeting.

220.    Thereafter, Miracle continued to fully perform or was excused from performance of all obligations required of it under the Investment Agreement.

221.    A present and actual controversy has arisen and now exists between Miracle and Defendants, in that Defendants dispute or deny the enforceability of the Agreement and Plaintiff's rights thereunder, including but not limited to: gross revenue participation, majority ownership of the copyright to the film, sole ownership of the copyright to the screenplay, distribution agreement approval rights and audit rights for the Film.

222.    Miracle contends that:

      a.  The Agreement is valid and enforceable;

      b.  Defendants are estopped from denying Miracle's corporate capacity or its right to enforce the Agreement; and

      c.  Plaintiff is entitled to all contractual and legal rights under the Investment Agreement, including any injunctive or equitable relief necessary to protect its rights.

223.    Miracle desires a judicial declaration of its rights and obligations under the Agreement, and of Defendants' corresponding obligations, so that the parties may avoid a multiplicity of legal actions and resolve the existing controversy.

224.    Declaratory relief is necessary and appropriate under California Code of Civil Procedure section 1060 to determine the parties' legal relations and to prevent further injury, uncertainty, and irreparable harm to Plaintiff.

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

## TWENTY-FIRST CAUSE OF ACTION
### DECLARATORY RELIEF
### (Corporation by Ratification)
*(As to the Campbell Defendants and JC)*

225. The parties to the Agreement understood and intended that Miracle would be incorporated as a nonprofit charitable foundation and that the Agreement was entered into on behalf of the soon-to-be-formed entity.

226. On November 17, 2022, Miracle was formally incorporated as a California nonprofit corporation. On November 28, 2022, Miracle's Board of Directors ratified and adopted the Agreement in a formal board meeting.

227. Thereafter, Miracle continued to fully perform or was excused from performance of all obligations required of it under the Investment Agreement.

228. Despite the valid ratification and Plaintiff's full performance, a present and actual controversy has arisen between the parties in that Defendants have denied or disputed the enforceability of the Agreement, the rights of Miracle thereunder, and the obligations imposed on Defendants pursuant to its terms, including but not limited to: gross revenue participation, majority ownership of the copyright to the film, sole ownership of the copyright to the screenplay, distribution agreement approval rights and audit rights for the Film.

229. Miracle contends that the Agreement is valid, binding, and enforceable; that Miracle has properly ratified the Agreement in accordance with California law; and that Defendants are bound by and obligated to perform their respective duties under the Agreement.

230. Miracle desires a judicial declaration under California Code of Civil Procedure section 1060 that:

      a. The Agreement is valid and enforceable;

      b. Miracle properly ratified the Agreement upon incorporation;

      c. Defendants are bound by and obligated to perform under the Agreement; and

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

d. Miracle is entitled to all rights and remedies available to it under the Agreement and applicable law.

231. Declaratory relief is necessary and proper to resolve the legal rights and obligations of the parties under the Agreement and to prevent further uncertainty, harm, or controversy.

**TWENTY-SECOND CAUSE OF ACTION**
**ALTERNATIVE CAUSE OF ACTION FOR**
**EQUITABLE RELIEF AND RESTITUTION**
**(By Promoter on Behalf of Pre-Incorporation Nonprofit Entity)**
*(Asserted by Plaintiff Richard Newman Against the Campbell Defendants and JC)*

232. Plaintiff Richard Newman is an individual who, before the incorporation of Miracle at Manchester Foundation, renamed as Miracle Children's Foundation, served as a promoter and founder of the organization.

233. At all relevant times, Richard Newman acted in good faith and in furtherance of Miracle's formation and charitable mission. He engaged in activities necessary to organize the corporation, including identifying investment opportunities, soliciting donors, and negotiating agreements on Miracle's behalf.

234. On or about April 23, 2022, Richard Newman entered into the written Investment Agreement with Defendants JC aka BMC expressly on behalf of the to-be-formed nonprofit entity, Miracle, as the "Interim President".

235. Defendants were fully aware that Richard Newman was acting in a representative capacity for Miracle and not in his personal capacity. Defendants did not object to this status and proceeded to accept and perform under the Agreement, including receiving $150,000 on behalf of the Miracle Donor, making public announcements, participating in the development, production, post-production, and distribution of the Film.

236. Miracle was formally incorporated on November 17, 2022, as a nonprofit public benefit corporation under California law. On November 28, 2022,

— 46 —

Miracle's Board of Directors ratified the Agreement entered into by Richard Newman.

237.   If the Court finds the Agreement to be legally invalid, unenforceable, or otherwise incapable of being enforced directly by Miracle, Richard Newman alleges this claim in the alternative to seek appropriate remedies for the benefit of Miracle and to prevent unjust enrichment by Defendants.

238.   Defendants have knowingly received and retained benefits under the pre-incorporation agreement and from the actions undertaken by Richard Newman and Miracle without providing the agreed consideration or otherwise fulfilling their obligations.

239.   Defendants would be unjustly enriched if permitted to retain the benefits obtained through Richard Newman's and Miracle's efforts while avoiding liability on the technical basis that Miracle was not yet incorporated at the time of contracting.

240.   Richard Newman is therefore entitled, on behalf of Miracle or in his individual capacity as promoter, if necessary, to seek:

    a. Restitution for the reasonable value of services rendered and benefits conferred;

    b. Imposition of a constructive trust over funds or assets wrongfully withheld; and

    c. Declaratory or injunctive relief to preserve Miracle's charitable interests and contractual expectations.

241.   This cause of action is pled in the alternative, pursuant to California Code of Civil Procedure § 431.10(d), to preserve the right to relief in equity should the Court decline to enforce the Investment Agreement as a matter of contract.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF

i.   For compensatory, general, and special damages in an amount to be proven at trial;

ii.   For punitive and exemplary damages according to proof, where applicable;

iii.   For statutory damages for copyright infringement as allowed by law;

iv.   For injunctive relief restraining further unauthorized use;

v.   For declaratory relief establishing Plaintiff's ownership rights;

vi.   For restitution and disgorgement of ill-gotten gains;

vii.   For imposition of a constructive trust over all relevant property and profits;

viii.   For a complete accounting;

ix.   For pre-judgment and post-judgment interest;

x.   For attorneys' fees and costs of suit where recoverable by law; and

xi.   For such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated:  July 1, 2025       **SAMINI BLOCK APC**

Benjamin M. Cutchshaw
*Attorneys for Plaintiffs*

COMPLAINT FOR DAMAGES, DECLARATORY JUDGMENT, AND INJUNCTIVE RELIEF