# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRYCEN NEWMAN, an individual, et al., Plaintiffs, v. JASON CAMPBELL, an individual, et al., Defendants. | Case No.:  3:25-cv-01736-RBM-DEB  **ORDER GRANTING DEFENDANT BRIDGESTONE MULTIMEDIA GROUP, LLC'S MOTION TO DISMISS COMPLAINT PURSUANT TO F.R.C.P. 12(b)(6)**  **[Doc. 12]** |

Pending before the Court is Defendant Bridgestone Multimedia Group, LLC'S ("Defendant BMG") Motion to Dismiss Complaint Pursuant to F.R.C.P. 12(b)(6) ("MTD").  (Doc. 12.)  Plaintiffs Brycen Newman, Richard Newman, and Miracle Children's Foundation, Inc. (collectively, "Plaintiffs") filed an Opposition to the MTD (Doc. 15), and Defendant BMG filed a Reply (Doc. 18).

The Court finds the matter suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1(d)(1).  For the reasons set forth below, the MTD (Doc. 12) is **GRANTED**.

1

3:25-cv-01736-RBM-DEB

# I.    BACKGROUND

## A.    Factual Background[1]

This action arises out of the production and commercial release of the motion picture *Miracle at Manchester* (the "Film").  (Doc. 1 ¶¶ 1–2.)[2]  The Film is based on the life of Plaintiff Brycen Newman, a cancer survivor.  (*Id*. ¶¶ 1, 20, 35.)

Defendant BMG, "a Delaware limited liability company with its principal place of business in Tempe, Arizona[,] . . . sells, markets, advertises, reproduces, and/or distributes motion pictures in the State of California, including the motion picture made the subject of this matter."  (Doc. 1 ¶ 21.)

Plaintiff Miracle Children's Foundation ("Plaintiff Miracle"), formerly known as Miracle at Manchester Foundation, "is a California not-for-profit corporation [with] its principal place of business in Del Mar, California."  (*Id*. ¶ 6.)  Plaintiff Miracle "received nonprofit status upon formation on or about November 17, 2022."  (*Id*.)  "Prior to its incorporation, . . . Plaintiff Miracle operated as a community-based initiative under the direction of its founder, Plaintiff Richard Newman."  (*Id*. ¶ 7.)

Plaintiff Richard Newman, a California resident, "acted on behalf of the intended nonprofit entity . . . and executed agreements with third parties in the name of the nonprofit Miracle as the 'Interim President,' with full disclosure of intent and purpose as to Defendants who were at all times fully aware of its pre-incorporation status."  (*Id*. ¶¶ 5, 8.)  Plaintiff Richard Newman is "named individually as the pre-incorporation promoter . . . in the alternative."  (*Id*. ¶ 7.)

---

[1]  The factual summary in this section reflects Plaintiffs' allegations, not conclusions of fact or law by this Court.  Well-pleaded factual allegations are accepted as true for purposes of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2]  The Court cites the paragraph numbers of the Complaint and the CM/ECF electronic pagination for other citations unless otherwise noted.

3:25-cv-01736-RBM-DEB

### 1.    Co-Defendants

Plaintiffs assert several causes of action against Defendants Jason Campbell, Heather Mudrick Campbell ("Defendant Heather Campbell," and together with Defendant Jason Campbell, the "Campbell Defendants"), JC Films Studios, Inc. ("Defendant JC Films"), BMC Productions, LLC ("Defendant BMC"), and Bridgestone Multimedia Group, LLC ("Defendant BMG") (collectively, "Defendants").  (Doc. 1.)

The Campbell Defendants are "engaged in producing motion pictures in California, including the one at issue," and are owners of Defendant JC Films.  (*Id.* ¶¶ 9–10.) Defendant JC Films is a West Virginia limited not-for-profit company that "produces, markets, advertises, reproduces, and/or distributes motion pictures in the State of California, including the motion picture made the subject of this matter."  (*Id.* ¶ 11.) Defendants Jason Campbell and JC Films "market themselves to the public as creators of faith-based films."  (*Id.* ¶ 32.)

Defendant BMC, a West Virginia limited liability company, "sells, markets, advertises, reproduces, and/or distributes motion pictures in the State of California, including the motion picture made the subject of this matter."  (*Id.* ¶ 12.)  "Upon information and belief" Plaintiffs allege that Defendant BMC is doing business as Defendant JC Films.  (*Id.*)

### 2.    Investment Agreement

On April 23, 2022, Plaintiffs entered into an "Investment Agreement" with Defendant JC Films relating "to the development, production, and distribution of" the Film. (*Id.* ¶ 35, *see* Doc. 1-2, Ex. 1 at 3–4.)  The Investment Agreement provided that Defendant JC Films would produce the Film and would "manage" production and distribution of the Film.  (Doc. 1 ¶ 36.)  Under the Investment Agreement, "'ownership' and thereby the copyright of the Film would be shared equally between Plaintiff [Brycen] Newman (33.33%), Plaintiff Miracle (33.33%), and Defendant [JC Films] (33.33%)."  (*Id.*) Additionally, "'all Distribution efforts will be mutually agreed' and [ ] Plaintiffs would collectively receive 66.66% of the 'GROSS DISTRIBUTION RECEIPTS' generated by

the Film in perpetuity." (*Id.*) "The Investment Agreement also provided that Plaintiffs could access and review the books and records related to the production and distribution of the [F]ilm upon reasonable notice." (*Id.*)

"In an addendum to the Investment Agreement, Defendant [Jason] Campbell offered in writing to sell the screenplay and hence its copyright, to Plaintiffs for $1,000 which Plaintiffs accepted providing the $1,000 to Defendant Campbell." (*Id.* ¶ 37; *see* Doc. 1-2, Ex. 2 at 6, *id.*, Ex. 3 at 8.) Plaintiffs allege that "Defendant [Jason] Campbell nonetheless copyrighted the screenplay in his sole name . . . [and through Defendant JC Films] wrongfully claimed sole copyright on the Film itself." (*Id.* ¶ 38.)

### 3. The Film

Following the execution of the Investment Agreement, "[t]he Film was produced by the Campbell Defendants and [Defendant] BMC *dba* [Defendant JC Films]." (*Id.* ¶ 39.) The Film's pre-production and production took place in San Diego, California during May and June 2022. (*Id.*) "Defendants [Jason] Campbell and JC Films created the script, budget, and schedule for the Film, and Plaintiff Miracle provided the funding for the Film, arranging a donation of $100,000 from a California foundation . . . to [Defendant JC Films] expressly for the Film costs." (*Id.*)

### 4. License and Distribution Agreement

On November 4, 2022, Defendants BMC and BMG entered into a License and Distribution Agreement ("Distribution Agreement") which provided Defendant BMG "exclusive worldwide distribution rights to the Film." (*Id.* ¶ 45; *see* Doc. 1-2, Ex. 9 at 32–47.) The Distribution Agreement contains the signatures of Defendant Jason Campbell, on behalf of Defendant BMC, and Robert L. Campbell, on behalf of Defendant BMG. (*Id.*)[3]

Plaintiffs allege that in the Distribution Agreement, "Defendant BMC dba [Defendant JC Films] misrepresented that it retains ownership of all IP and owns or

---

[3] Robert L. Campbell is not a named Defendant or a party to this action.

3:25-cv-01736-RBM-DEB

controls all rights to the 'title.'" (*Id*.)  "Upon information and belief, Defendant BMG has made payments to Defendants BMC and the Campbell Defendants pursuant to the unauthorized Distribution Agreement." (*Id*. ¶ 48.)

"On March 31, 2023, Defendant BMG was provided with a copy of the Investment Agreement," which Plaintiffs allege placed Defendant BMG "on actual notice of Plaintiffs' 66.66% ownership and distribution rights." (*Id*. ¶ 57.)  Nonetheless, Defendant BMG allegedly "continued to distribute the Film and transmit revenues solely to [Defendant Jason] Campbell." (*Id*.)

On February 2, 2024, Plaintiffs sent a demand letter to Defendant BMG demanding its share of the revenues and "setting forth numerous specific breaches by Defendants [Jason] Campbell, BMC," and JC Films.  (*Id*.; *see* Doc. 1-2, Ex. 18 at 77–80.)  "After further demands for its share of the revenues, . . . [Defendant] BMG issued a notice to the parties that it was freezing all distribution of revenues effective April 29, 2024, until a resolution of the dispute was achieved." (*Id*. ¶ 57.)

**B.    Procedural History**

On July 7, 2025, Plaintiffs filed a Complaint for Damages, Declaratory Judgment, and Injunctive Relief ("Complaint") asserting 22 causes of action against several groups of Defendants for: (1) breach of written contract; (2) breach of implied covenant of good faith and fair dealing; (3) fraud; (4) negligent misrepresentation; (5) conversion; (6) breach of fiduciary duty; (7) misappropriation of right of publicity; (8) unfair competition pursuant to Cal. Bus. & Prof. Code § 17200; (9) common law misappropriation of name; (10) passing off/ false association under common law and section 43 of the Lanham Act, 15 U.S.C. § 1125(a); (11) intentional interference with prospective economic advantage; (12) unjust enrichment/ common count: money had and received; (13) constructive trust; (14) accounting; (15) copyright infringement, 17 U.S.C. § 501; (16) injunctive relief; (17) civil conspiracy to commit breach of contract and misappropriation; (18) false designation of origin, 15 U.S.C. § 1125(a)(1); (19) declaratory relief; (20) declaratory relief, corporation by estoppel; (21) declaratory relief, corporation by ratification; and (22) alternative cause

of action for equitable relief and restitution.  (Doc. 1 ¶¶ 59–241.)

On July 31, 2025, Defendants Jason Campbell, JC Films, and BMC, each proceeding *pro se* by and through Defendant Jason Campbell, filed a Joint Answer to Complaint and Affirmative Defenses ("Joint Answer").  (Doc. 4.)  Defendant Heather Campbell, proceeding *pro se*, filed an Answer to the Complaint on August 4, 2025. (Doc. 5.)  On August 15, 2022, Defendant Jason Campbell filed a Motion for Judicial Relief.  (Doc. 9.)  Shortly thereafter, the Court issued an order striking the Joint Answer as to Defendants JC Films and BMC and ordering Defendants JC Films and BMC to obtain counsel.  (Doc. 11.)  On October 2, 2025, counsel filed an appearance for the Campbell Defendants, JC Films, and BMC.  (Doc. 20.)  On October 15, 2025, Defendants JC Films and BMC each filed separate Answers to the Complaint.  (*See* Docs. 21–22.)

Defendant BMG filed the instant MTD on September 6, 2025.  (Doc. 12.)  On September 22, 2025, Plaintiffs filed the Opposition. (Doc. 15.)  Defendant BMG filed the Reply on September 29, 2025.  (Doc. 18.)

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(b)(6), an action may be dismissed for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Nor is the Court "required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely

conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (cleaned up).

### III.    DISCUSSION

Plaintiffs assert causes of action against Defendant BMG for: (1) conversion; (2) misappropriation of right of publicity; (3) unjust enrichment/common count: money had and received; (4) constructive trust; (5) unfair competition pursuant to California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (6) accounting; (7) injunctive relief; (8) civil conspiracy to commit breach of contract and misappropriation; and (9) declaratory relief. (*Id*. ¶¶ 98–104, 111–125, 150–170, 180–198, 209–216.) Defendant BMG moves to dismiss all claims against it under Rule 12(b)(6) for failure to state a claim. (Doc. 12.) The Court addresses each claim in turn.

### A.    Conversion (Fifth Cause of Action)

Plaintiffs allege that Defendants "wrongfully exercised dominion and control over" royalty payments derived from the Film "by collecting, withholding, and failing to remit such payments to Plaintiffs." (Doc. 1 ¶ 100.) Defendant BMG seeks to dismiss this claim on the grounds that: (1) the claim is preempted by the Copyright Act; (2) Defendant BMG has no obligation to pay royalties; and (3) there is no specific sum capable of identification. (Doc. 12-1 at 13–17.)[4]

"Conversion is the wrongful exercise of dominion over the property of another." *Hodges v. Cnty. of Placer*, 41 Cal. App. 5th 537, 551 (2019). "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3)

---

[4]  Because the Court agrees that the conversion claim is preempted, it need not reach Defendant BMG's remaining arguments.

7

3:25-cv-01736-RBM-DEB

damages." *Id*. "[S]tate law conversion claims are capable of being completely preempted by the Copyright Act." *Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1092 (C.D. Cal. 2005), *aff'd*, 446 F.3d 1011 (9th Cir. 2006).  The Copyright Act preempts a state law claim if: (1) the rights asserted under state law "are equivalent to those protected by the Copyright Act"; and (2) the work involved "fall[s] within the subject matter of the Copyright Act." *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998) (cleaned up); *see* 17 U.S.C. § 301.  "Copyright preemption is both explicit and broad."  *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 904 (9th Cir. 1992).

As a preliminary matter, neither party disputes that Plaintiffs' conversion claim falls within the subject matter identified in 17 U.S.C. § 102(1)(6).  Plaintiffs' conversion claim against Defendant BMG is based on allegations that Defendant BMG improperly converted royalties derived from the Film's distribution.  (*See* Doc. 1 ¶¶ 57, 100.)  The second prong of the preemption analysis is therefore satisfied.  *See Worth v. Universal Pictures, Inc.*, 5 F. Supp. 2d 816, 823 (C.D. Cal. 1997) ("Federal copyright law encompasses reproduction and distribution of copyrighted works.").

As to the first prong, whether the rights asserted are equivalent to those protected by the Copyright Act, courts "must analyze the elements of the state-law cause of action to see if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights in the [Copyright] Act." *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1125 (N.D. Cal. 2001).  The state law claim is not preempted if "the right under state law [has] an 'extra element' that 'changes the nature of the action so that it is qualitatively different from a copyright infringement claim.'" *Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542, 1550 (N.D. Cal. 1990) (quoting *Mayer v. Josiah Wedgwood and Sons, Ltd.*, 601 F. Supp. 1523, 1535 (S.D.N.Y. 1985)).

Plaintiffs argue there is no preemption because "the extra element [of] Plaintiff's demand for return and Defendant's refusal is sufficient to establish" their conversion claim. (Doc. 15 at 6–7.)  However, "Plaintiffs do not bring their conversion action for retrieval of these items, but rather for the profits from the movie's reproduction and distribution."

3:25-cv-01736-RBM-DEB

*Worth*, 5 F. Supp. 2d at 822–23. "The profits created from the [Film] are the damages sought from [its] unauthorized reproduction and distribution and are subsumed within federal copyright law." *Id*. at 823. "Consequently, 'where a plaintiff is only seeking damages from a defendant's *reproduction* of a work—and not the actual return of a physical piece of property—the claim is preempted.'" *McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1021–22 (C.D. Cal. 2020) (emphasis in original) (quoting *Firoozye*, 153 F. Supp. 2d at 1130).

Accordingly, Plaintiffs' claim for conversion is preempted by the Copyright Act. *See Worth*, 5 F. Supp. 2d at 822–23; *Dielsi v. Falk*, 916 F. Supp. 985, 992 (C.D. Cal. 1996) ("Regardless of how it is cast, however, [p]laintiff's [conversion claim] is clearly preempted by federal copyright law because it makes the crucial allegation that Defendants have wrongfully used and distributed [p]laintiff's work of authorship."); *Ward v. Mitchell*, No. 12–cv–3932 NC, 2013 WL 1758840, at *5 (N.D. Cal. Apr. 24, 2013) (holding plaintiff's "conversion claim for profits from distribution of the albums is preempted."). Plaintiff's Fifth Cause of Action is therefore **DISMISSED WITHOUT LEAVE TO AMEND** as to Defendant BMG.

**B.    Misappropriation of Right of Publicity (Seventh Cause of Action)**

Plaintiffs assert both a statutory and common law right of publicity claim against Defendant BMG. (Doc. 1 ¶¶ 112–118.) Specifically, Plaintiffs challenge Defendant BMG's use of their likeness in the "advertising, promotion, marketing, and/or distribution of the Film." (*Id*. ¶ 113.) Defendant BMG does not contest the sufficiency of this claim. Instead, Defendant BMG argues that: (1) Plaintiff Miracle, a legal entity, does not have the right of publicity; and (2) "the First Amendment absolutely protects [its] distribution of the Film as against Plaintiffs' right of publicity claim" because "the Film is an expressive work and the life story of a public figure." (Doc. 12-1 at 18–20.)[5]

---

[5]  Plaintiffs do not respond to Defendant BMG's argument concerning Plaintiff Miracle's right of publicity. (*See generally* Doc. 18.) As "the right of publicity appears to attach

9

"'[C]ommercial speech' is entitled to the protection of the First Amendment, albeit to protection somewhat less extensive than that afforded 'noncommercial speech.'" *Zauderer v. Off. of Disciplinary Couns.*, 471 U.S. 626, 637 (1985) (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60 (1983)). "Promotional speech may be noncommercial if it advertises an activity itself protected by the First Amendment." *Page v. Something Weird Video*, 960 F. Supp. 1438, 1443 (C.D. Cal. 1996) (citing *Bolger*, 463 U.S. at 67 n. 14). "[A]dvertisements of expressive works are not actionable where the advertisements are 'merely an adjunct of the protected work and promote only the protected work.'" *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1123 (N.D. Cal. 2002) (quoting *Cher v. Forum Int'l Inc.*, 692 F.2d 634, 639 (9th Cir. 1982), *cert. denied* 462 U.S. 1120 (1983); *Guglielmi v. Spelling–Goldberg Prods.*, 25 Cal. 3d 860, 871–72 (1979) (Bird, J. concurring)).[6]

It has long been established that motion pictures, the medium of expression involved in this case, are a form of expression protected by the First Amendment. *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952). Consequently, "[u]nder the First Amendment, a cause of action for appropriation of another's 'name and likeness may not be maintained' against 'expressive works, whether factual or fictional.'" *Daly*, 238 F. Supp. 2d at 1123 (citing *Guglielmi*, 25 Cal. 3d at 873 (Bird, J. concurring)). Courts applying California law have consistently held that television programs and films based on the portrayal of real individuals are expressive works "protected by the First Amendment, which safeguards the storytellers and artists who take the raw materials of life—including the stories of real individuals, ordinary or extraordinary—and transform them into art, be it articles, books,

---

only to actual persons," Plaintiff Miracle's Seventh Cause of Action against Defendant BMG is **DISMISSED**. *See Upper Deck Authenticated, Ltd. v. CPG Direct*, 971 F. Supp. 1337, 1348–49 (S.D. Cal. 1997).

[6] "Justice Bird's concurrence [in *Guglielmi*], is persuasive authority because the concurrence 'commanded the support of the majority of the court.'" *Daly*, 238 F. Supp. 2d at 1127 n.2 (quoting *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 396–97 n.7 (2001)).

3:25-cv-01736-RBM-DEB

movies, or plays." *Sarver v. Chartier*, 813 F.3d 891, 905 (9th Cir. 2016); *see De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 860 (2018) (holding a fictionalized television series based on the lives of real Hollywood actresses was an expressive work "as constitutionally protected as was the film in *Sarver*") (collecting cases); *Daly*, 238 F. Supp. 2d at 1123 ("As [a television program] is an expressive work protected by the First Amendment, plaintiff cannot state a misappropriation claim based on the use of her likeness in the program or the advertisements for the program."); *Brown v. Showtime Networks, Inc.*, 394 F. Supp. 3d 418, 437–40 (S.D.N.Y. 2019) (applying California law and dismissing common law and statutory right of publicity claims brought by musician Bobby Brown against producers who allegedly used footage of him in a documentary film).

In this case, it is undisputed that the Film qualifies as an expressive work. (*See* Doc. 1 ¶ 172 (alleging the screenplay and motion picture for *Miracle in Manchester* "is an original creation in a tangible medium of expression").[7] "[B]y virtue of being an expressive work, [the Film] is protected under the First Amendment." *Brown*, 394 F. Supp. 3d at 438 (applying California law). That Defendant BMG did not have "authorization or consent" to use Plaintiffs' name and likeness (*see* Doc. 16 at 8) does not change the result. *See De Havilland*, 1 Cal. App. 5th at 861.

Further, Plaintiffs allege that Defendant BMG used their names, likeness, and life stories to "advertis[e], promot[e], market[ ], and/or distribut[e] . . . the Film." (Doc. 1 ¶ 113.) The "use of a person's name and likeness to advertise a novel, play, or motion picture concerning that individual is not actionable as an infringement of the right of

---

[7] In their Opposition, Plaintiffs reference the "transformative use" test set forth in *Comedy III*. (*See* Doc. 15 at 8 (quoting *Comedy III*, 25 Cal. 4th at 405).) As Defendant BMG does not raise the "transformative use" defense, the Court need not reach it. *See Sarver*, 813 F.3d at 904 n.6 (finding it unnecessary to reach "transformative use" defense); *De Havilland*, 1 Cal. App. 5th at 861 ("*Comedy III*'s 'transformative' test makes sense when applied to products and merchandise—'tangible personal property,' in the Supreme Court's words.").

3:25-cv-01736-RBM-DEB

publicity." *De Havilland*, 21 Cal. App. 5th at 862 (quoting *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 336 (E.D. Pa. 1996)). Because the Film is an expressive work, it is protected by the First Amendment and any depiction of Plaintiffs in Defendant BMG's advertising, marketing, and promotion of the Film is "protected and not actionable under California's common law right of publicity." *See Brown*, 394 F. Supp. 3d at 439. Other than relying on their factual allegations, Plaintiffs have not advanced any argument or cited authority that convinces the Court otherwise. Based on the allegations in the Complaint, Plaintiffs' claim for misappropriation of the right of publicity against Defendant BMG is barred under the First Amendment.

Accordingly, Defendant BMG's MTD is **GRANTED** as to Plaintiffs' Seventh Cause of Action and this claim is **DISMISSED WITHOUT LEAVE TO AMEND**. *See Boquist v. Courtney*, 32 F.4th 764, 774 (9th Cir. 2022) ("[A] complaint may be dismissed when the allegations of the complaint give rise to an affirmative defense that clearly appears on the face of the pleading"); *Daly*, 238 F. Supp. 2d at 1123, 1127. (dismissing statutory and common law claims for misappropriation of the right of publicity without leave to amend).

**C.     Remaining Causes of Action**

Plaintiffs' remaining claims against Defendant BMG include the following causes of action for: (1) unfair competition (Eighth Cause of Action); (2) unjust enrichment/common count: money had and received (Twelfth Cause of Action); (3) constructive trust (Thirteenth Cause of Action); (4) accounting (Fourteenth Cause of Action); (5) injunctive relief (Sixteenth Cause of Action); (5) civil conspiracy to commit breach of contract and misappropriation (Seventeenth Cause of Action); and (6) declaratory relief (Nineteenth Cause of Action). (Doc. 12-1 at 21.) Defendant BMG seeks to dismiss the remaining causes of action against it, arguing that such claims "all depend on the viability of the flawed conversion and misappropriation of right of publicity claims." (Doc. 12-1 at 21.) The Court addresses each cause of action in turn.

3:25-cv-01736-RBM-DEB

### 1.    Unfair Competition (Eighth Cause of Action)

"The UCL prohibits 'any unlawful, unfair or fraudulent business act or practice.'" *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (quoting Cal. Bus. & Prof. Code § 17200). "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009). An "unlawful" practice under the UCL is "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (cleaned up). Thus, "to state a claim under the unlawful prong of the UCL, a plaintiff must sufficiently plead a predicate violation." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d. 1087, 1097 (N.D. Cal. 2014); *see CRST Van Expedited, Inc. v. Werner Enters., Inc.*, 479 F.3d 1099, 1107 (9th Cir. 2007) (noting a UCL unlawful prong cause of action can be premised on the invasion of a common law right). An "unfair" business practice is one "that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel–Tech*, 20 Cal. 4th at 187; *see Fraley v. Facebook, Inc.*, 830 F. Supp. 2d 785, 813 n.7 (N.D. Cal. 2011) ("The standards for determining what constitutes an 'unfair business practice' under the UCL currently appear to differ depending on whether the UCL claim is brought by a competitor or a consumer."). Finally, a business practice is "fraudulent" if members of the public are likely to be deceived. *Prata v. Superior Ct.*, 91 Cal. App. 4th 1128, 1146 (2001).

In this case, Plaintiffs assert a UCL claim against Defendants for "unlawful, unfair, and fraudulent business acts and practices . . . in connection with their unauthorized and deceptive use of Plaintiffs' names, likenesses, life stories, and the identity and branding of Plaintiff Miracle, for the purpose of marketing, promoting, and exploiting a motion picture . . . ." (Doc. 1 ¶ 120.) Plaintiffs' UCL claim against Defendant BMG is predicated on the same facts and underlying conduct concerning the alleged conversion of royalties and violations of the common law and statutory right of publicity. (*See id*. ¶ 121(a), (d).) However, for the reasons previously discussed (*see supra* Sec.III.A–B), Plaintiffs' claims

13

3:25-cv-01736-RBM-DEB

for conversion and misappropriation of the right of publicity against Defendant BMG fail. *See Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1010–11 (N.D. Cal. 2016) ("Where the UCL claim is premised on the same acts alleged in the complaint's other causes of action, and those causes of action fail, the UCL claim likewise must be dismissed because the plaintiff has not adequately alleged any predicate unlawful acts.").

Although Plaintiffs seemingly assert that Defendants violated all three prongs of the UCL, they fail to allege any additional "unfair" or "fraudulent" conduct specifically committed by Defendant BMG. As to the fraudulent prong, Plaintiffs allege that Defendants' conduct "was likely to deceive the public into believing that Defendants' film and promotional materials were approved by, affiliated with, or sponsored by Plaintiffs . . . , and that Defendants had the right to exploit Plaintiffs' stories and charitable identity." (Doc. 1 ¶ 123.) This allegation seemingly refers to the Campbell Defendants, Defendant JC Films, and Defendant BMC's alleged false association. (*See id*. ¶¶ 138–139.) Plaintiffs do not allege that Defendant BMG engaged in such conduct or that it otherwise engaged in the type of conduct necessary to show fraud under the UCL, let alone with the requisite particularity. *See Fraley*, 830 F. Supp. 2d at 812 ("Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b).").

Because Plaintiffs do not allege that Defendant BMG committed a predicate violation of another law, and do not state any other cognizable claim, Plaintiffs fail to state a UCL claim against Defendant BMG. *See Ambrozewicz v. 6Sense Insights, Inc.*, 804 F. Supp. 3d 1026, 1036 (N.D. Cal. 2025) (dismissing UCL claim when based on right of publicity allegations that were insufficient to state a claim); *Krantz v. BT Visual Images, L.L.C.*, 89 Cal. App. 4th 164, 178 (2001) ("[Claims] for relief under the unfair competition law stand or fall depending on the fate of the antecedent substantive causes of action."). Accordingly, Defendant BMG's MTD as to Plaintiffs' Eighth Cause of Action is **GRANTED** and the UCL claim is **DISMISSED WITH LEAVE TO AMEND**.

**2.      Unjust Enrichment, Constructive Trust, Accounting, Injunctive Relief, and Declaratory Relief (Twelfth, Thirteenth, Fourteenth, Sixteenth, and Nineteenth Causes of Action)**

Unjust enrichment, injunctive relief, and declaratory relief are remedies, not independent causes of action. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1031 (N.D. Cal. 2012) ("California does not recognize a stand-alone cause of action for unjust enrichment: 'unjust enrichment is not a cause of action, just a restitution claim.'") (quoting *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1307 (2011)); *Johnson v. Homecomings Fin.*, Civil No. 09cv1262 L(NLS), 2011 WL 4373975, at *5 (S.D. Cal. Sept. 20, 2011) ("Injunctive and declaratory relief are remedies, as opposed to independent causes of action.") (citing cases). "Rather, they constitute relief that may issue in concert with recognized causes of action." *Doe v. Vazquez*, Case No. CV 17-00234-BRO (JEMx), 2017 WL 11624827, at *2 n.1 (C.D. Cal. June 13, 2017). Similarly, "constructive trust and accounting are equitable remedies, not causes of action." *Goodrich & Pennington Mortg. Fund, Inc. v. Chase Home Fin., LLC*, CASE NO. 05cv636 JLS (POR), 2008 WL 11338041, at *4 (S.D. Cal. Apr. 22, 2008); *see Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064, 1073 (C.D. Cal. 2010) (dismissing constructive trust claim because it "is a remedy, not a cause of action.").

Even so, Plaintiffs do not identify any claims against Defendant BMG for which unjust enrichment, injunctive relief, and declaratory relief would be an appropriate remedy. These causes of action also fail to state a claim for which relief may be granted. *See Ballard v. Chase Bank USA, N.A.*, Civil No. 10cv790 L(POR), 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief 'rises or falls with [the] other claims.'") (quoting *Surf & Sand, LLC v. City of Capitola*, No. C 07-05043 RS, 2008 WL 2225684, at *2 n. 5 (N.D. Cal. May 28, 2008)); *Fraley*, 830 F. Supp. 2d at 815 (unjust enrichment). Defendant BMG's MTD as to Plaintiffs' Twelfth, Thirteenth, Fourteenth, Sixteenth, and Nineteenth Causes of Action is **GRANTED** and these claims are **DISMISSED**

3:25-cv-01736-RBM-DEB

**WITHOUT LEAVE TO AMEND** but without prejudice to Plaintiffs' ability to seek such remedies as forms of relief for one of their other claims in an amended pleading.

### 3. Conspiracy (Seventeenth Cause of Action)

Plaintiffs assert a claim against all Defendants for civil conspiracy to commit breach of contract, misappropriation, conversion, and "fraudulent concealment of revenues and contractually material facts." (Doc. 1 ¶ 196(a)–(d).)  Defendant BMG argues a conspiracy claim cannot "survive where one alleged conspirator bears no duty to the plaintiffs; and where its alleged co-conspirator would be conspiring to breach its own contract, a claim not recognized under California law." (Doc. 12-1 at 22–23.)

"Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510–11 (1994).  The elements of a claim for civil conspiracy are: "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Swipe & Bite, Inc. v. Chow*, 147 F. Supp. 3d 924, 935–36 (N.D. Cal. 2015) (citing *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995)).  A civil conspiracy claim is "sustainable only after an underlying tort claim has been established." *Am. Master Lease LLC v. Idanta Partners, Ltd.*, 225 Cal. App. 4th 1451, 1474 (2014). "Under California law, 'a claim for civil conspiracy does not arise unless the alleged conspirator owed the victim a duty not to commit the underlying tort.'" *In re Yahoo! Litig.*, 251 F.R.D. 459, 474 (C.D. Cal. 2008) (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1133 (C.D. Cal. 2003)) (citations omitted).  "Because liability is premised on the commission of a single tort, it is logical that all conspirators must be legally capable of committing the wrong." *Neilson*, 290 F. Supp. 2d at 1135.

The Court previously dismissed Plaintiffs' conversion and misappropriation of the right of publicity claims against Defendant BMG. (*See supra* Sec.III.A–B.)  Because "[a] civil conspiracy claim can be activated only by the commission of an actual tort," Plaintiffs'

3:25-cv-01736-RBM-DEB

claim for conspiracy to commit conversion and misappropriation fails. *See Idle Media, Inc. v. Create Music Grp., Inc.*, Case No. CV 24-11009-DMG (ASx), 2025 WL 4231565, at \*14 (C.D. Cal. Sept. 30, 2025) (dismissing conspiracy to commit conversion claim where the underlying conversion claim was already dismissed) (citing *Applied Equip.*, 7 Cal. 4th at 511–14); *Brian Jonestown Massacre v. Davies*, Case No. 13–cv–04005 NC, 2014 WL 4076549, at \*5 (N.D. Cal. Aug. 18, 2014) ("[B]ecause the Court finds that [plaintiff's] underlying claim for conversion is preempted, the Court also finds that conspiracy based on conversion of copyrighted material is preempted.").

Plaintiffs also allege that "Defendants' conduct constitutes a civil conspiracy to commit" a breach of contract. (Doc. 1 ¶ 196(a).) "California courts have consistently held that because a non-party to a contract owes no duty under the contract, conspiracy can impose no liability on the non-party." *Mike Moran v. Blue Hill Specialty Ins. Co., Inc.*, Case No. 2:25-cv-11467-JLS-DSR, 2026 WL 539467, at \*6 (C.D. Cal. Feb. 26, 2026) (citing *Applied Equip. Corp.*, 7 Cal. 4th at 511 (collecting cases)); *see Monaco v. Liberty Life Assurance Co.*, No. C06-07021 MJJ., 2007 WL 420139, at \*4 (N.D. Cal. Feb. 6, 2007) ("In order to be liable for breach of contract a defendant must be a consenting party to the contract."). Because Defendant BMG was not a party to the Investment Agreement, it owed no duty to Plaintiffs under the Investment Agreement. Moreover, "civil co-conspirator liability extends only to *torts* committed by co-conspirators, not to contractual wrongs." *Mintel Learning Tech., Inc. v. Beijing Kaidi Educ.*, No. C 06-7541 PJH, 2007 WL 2288329, at \*5 (N.D. Cal. Aug. 9, 2007) (emphasis added); *see Applied Equip. Corp.*, 7 Cal. 4th at 515 ("Conduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law."). As such, Defendant BMG cannot be held liable as a co-conspirator for breach of the Investment Agreement.

Lastly, Plaintiffs claim that Defendants engaged in conspiracy to commit fraudulent concealment. (Doc. 1 ¶ 196(d).) "Where a plaintiff alleges that a defendant is liable for fraudulent misrepresentation or concealment under a civil conspiracy theory, the

3:25-cv-01736-RBM-DEB

conspiracy must also be alleged with particularity." *Gold Flora, LLC v. Constellation NewEnergy, Inc.*, Case No. 8:24-cv-01813-JVS-JDE, 2025 WL 3852264, at *6 (C.D. Cal. Aug. 21, 2025) (citations omitted). Plaintiffs allege that "Defendant BMG knew that the other named Defendants did not have the rights to use Plaintiff [Brycen] Newman's story, name, and image." (Doc. 1 ¶ 194.) However, Plaintiffs do not assert specific factual allegations establishing that Defendant BMG had actual knowledge of the planned tort asserted—fraudulent concealment of revenues and contractually material facts. (*See id*. ¶ 196(d).) Even so, "[k]nowledge of the planned tort must be combined with intent to aid in its commission." *Kidron*, 40 Cal. App. 4th at 1582; *see Kelley v. Mortg. Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1058 (N.D. Cal. 2009) (dismissing conspiracy claim where plaintiffs failed to "allege specific facts about how each defendant conspired to commit the allegedly wrongful acts").

Plaintiffs therefore fail to state a civil conspiracy claim against Defendant BMG. Accordingly, Defendant BMG's MTD is **GRANTED** as to the Seventeenth Cause of Action and this claim is **DISMISSED WITH LEAVE TO AMEND** to the extent Plaintiffs are able to state a cognizable, underlying claim in an amended pleading.

## IV.    CONCLUSION

Based on the foregoing reasons, Defendant BMG's Motion to Dismiss (Doc. 12) is **GRANTED**. Specifically:

1. The Fifth Cause of Action for conversion is **DISMISSED WITHOUT LEAVE TO AMEND** as to Defendant BMG.

2. The Seventh Cause of Action for misappropriation of the right of publicity is **DISMISSED WITHOUT LEAVE TO AMEND** as to Defendant BMG.

3. The Eighth Cause of Action for unfair competition is **DISMISSED WITH LEAVE TO AMEND** as to Defendant BMG.

4. The Twelfth Cause of Action for unjust enrichment/common count: money had and received is **DISMISSED WITHOUT LEAVE TO AMEND** as to Defendant BMG but without prejudice to Plaintiffs' ability to seek such relief as

3:25-cv-01736-RBM-DEB

a remedy for one of their other claims in an amended pleading.

5. The Thirteen Cause of Action for constructive trust is **DISMISSED WITHOUT LEAVE TO AMEND** as to Defendant BMG but without prejudice to Plaintiffs' ability to seek such relief as a remedy for one of their other claims in an amended pleading.

6. The Fourteenth Cause of Action for accounting is **DISMISSED WITHOUT LEAVE TO AMEND** as to Defendant BMG but without prejudice to Plaintiffs' ability to seek such relief as a remedy for one of their other claims in an amended pleading.

7. The Sixteenth Cause of Action for injunctive relief is **DISMISSED WITHOUT LEAVE TO AMEND** as to Defendant BMG but without prejudice to Plaintiffs' ability to seek such relief as a remedy for one of their other claims in an amended pleading.

8. The Seventeenth Cause of Action for civil conspiracy to commit breach of contract and misappropriation is **DISMISSED WITH LEAVE TO AMEND** as to Defendant BMG.

9. The Nineteenth Cause of Action for declaratory relief is **DISMISSED WITHOUT LEAVE TO AMEND** as to Defendant BMG but without prejudice to Plaintiffs' ability to seek such relief as a remedy for one of their other claims in an amended pleading.

Plaintiffs may file an amended complaint addressing the identified deficiencies **on or before April 24, 2025**.

**IT IS SO ORDERED**.

DATE: March 18, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

3:25-cv-01736-RBM-DEB