**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BRYCEN NEWMAN, an individual, et al., | Case No.: 3:25-cv-01736-RBM-DEB |
| Plaintiffs, | **ORDER DENYING MOTION FOR JUDICIAL REVIEW** |
| v. | |
| JASON CAMPBELL, an individual, et al., | **[Doc. 9]** |
| Defendants. | |

Pending before the Court is Defendant Jason Campbell's ("Defendant Jason Campbell") Motion for Judicial Review ("Motion"). (Doc. 9.)[1] Plaintiffs Brycen Newman, Richard Newman, and Miracle Children's Foundation, Inc. (collectively, "Plaintiffs") have not filed an Opposition. While Plaintiffs' failure to oppose "may constitute a consent to the granting" of the Motion, *see* S.D. Cal. Civ. R. 7.1(f)(3)(c), the Court will resolve the Motion on the merits in the interests of justice.[2] For the reasons set forth below, the Motion (Doc. 9) is **DENIED**.

---

[1] Defendant Jason Campbell filed the Motion "on behalf of himself and codefendants BMC Productions, LLC and JCFilms Studios Inc." (Doc. 9 at 1.) However, because Defendant Campbell may not represent legal entities (*see* Doc. 11), the Court resolves this Motion as to Defendant Campbell only.

[2] The Court warns the Parties to comply with all Federal and Local Rules in the future.

## I.   BACKGROUND

**A.   Factual Background[3]**

This action arises out of the production and commercial release of the motion picture *Miracle at Manchester* (the "Film").  (Doc. 1 ¶¶ 1–2.)[4]  The Film is based on the life of Plaintiff Brycen Newman, a cancer survivor.  (*Id*. ¶¶ 1, 20, 35.)

Plaintiff Miracle Children's Foundation ("Plaintiff Miracle"), formerly known as Miracle at Manchester Foundation, "is a California not-for-profit corporation [with] its principal place of business in Del Mar, California."  (*Id*. ¶ 6.)  Plaintiff Miracle "received nonprofit status upon formation on or about November 17, 2022."  (*Id*.)  "Prior to its incorporation, . . . Plaintiff Miracle operated as a community-based initiative under the direction of its founder, Plaintiff Richard Newman."  (*Id*. ¶ 7.)

Plaintiff Richard Newman, a California resident, "acted on behalf of the intended nonprofit entity . . . and executed agreements with third parties in the name of the nonprofit Miracle as the 'Interim President,' with full disclosure of intent and purpose as to Defendants who were at all times fully aware of its pre-incorporation status."  (*Id*. ¶¶ 5, 8.)  Plaintiff Richard Newman is "named individually as the pre-incorporation promoter . . . in the alternative."  (*Id*. ¶ 7.)

### 1.   Co-Defendants

Plaintiffs assert several causes of action against Defendants Jason Campbell, Heather Mudrick Campbell ("Defendant Heather Campbell," and together with Defendant Jason Campbell, the "Campbell Defendants"), JC Films Studios, Inc. ("Defendant JC Films"), BMC Productions, LLC ("Defendant BMC"), and Bridgestone Multimedia Group, LLC ("Defendant BMG") (collectively, "Defendants").  (Doc. 1.)

---

[3]  The factual summary in this section reflects Plaintiffs' allegations, not conclusions of fact or law by this Court.

[4]  The Court cites the paragraph numbers of the Complaint and the CM/ECF electronic pagination for other citations unless otherwise noted.

2

3:25-cv-01736-RBM-DEB

The Campbell Defendants are "engaged in producing motion pictures in California, including the one at issue," and are owners of Defendant JC Films.  (*Id*. ¶¶ 9–10.) Defendant JC Films is a West Virginia limited not-for-profit company that "produces, markets, advertises, reproduces, and/or distributes motion pictures in the State of California, including the motion picture made the subject of this matter."  (*Id*. ¶ 11.) Defendants Jason Campbell and JC Films "market themselves to the public as creators of faith-based films."  (*Id*. ¶ 32.)

Defendant BMC, a West Virginia limited liability company, "sells, markets, advertises, reproduces, and/or distributes motion pictures in the State of California, including the motion picture made the subject of this matter."  (*Id*. ¶ 12.)  "Upon information and belief" Plaintiffs allege that Defendant BMC is doing business as Defendant JC Films.  (*Id*.)

### 2.    Investment Agreement

On April 23, 2022, Plaintiffs entered into an "Investment Agreement" with Defendant JC Films relating "to the development, production, and distribution of" the Film.  (*Id*. ¶ 35, *see* Doc. 1-2, Ex. 1 at 3–4.)  The Investment Agreement provided that Defendant JC Films would produce the Film and would "manage" production and distribution of the Film.  (Doc. 1 ¶ 36.)  Under the Investment Agreement, "'ownership' and thereby the copyright of the Film would be shared equally between Plaintiff [Brycen] Newman (33.33%), Plaintiff Miracle (33.33%), and Defendant [JC Films] (33.33%)."  (*Id*.) Additionally, "'all Distribution efforts will be mutually agreed' and [ ] Plaintiffs would collectively receive 66.66% of the 'GROSS DISTRIBUTION RECEIPTS' generated by the Film in perpetuity."  (*Id*. (quoting Doc. 1-2, Ex. 1 at 3–4).)  "The Investment Agreement also provided that Plaintiffs could access and review the books and records related to the production and distribution of the [F]ilm upon reasonable notice."  (*Id*.)

"In an addendum to the Investment Agreement, Defendant [Jason] Campbell offered in writing to sell the screenplay and hence its copyright, to Plaintiffs for $1,000 which Plaintiffs accepted providing the $1,000 to Defendant Campbell."  (*Id*. ¶ 37; *see* Doc. 1-2,

3

3:25-cv-01736-RBM-DEB

Ex. 2 at 6, *id.*, Ex. 3 at 8.)  Plaintiffs allege that "Defendant [Jason] Campbell nonetheless copyrighted the screenplay in his sole name . . . [and through Defendant JC Films] wrongfully claimed sole copyright on the Film itself."  (*Id.* ¶ 38.)

### 3.  The Film

Following the execution of the Investment Agreement, "[t]he Film was produced by the Campbell Defendants and [Defendant] BMC *dba* [Defendant JC Films]."  (*Id.* ¶ 39.) The Film's pre-production and production took place in San Diego, California during May and June 2022.  (*Id.*)  "Defendants [Jason] Campbell and JC Films created the script, budget, and schedule for the Film, and Plaintiff Miracle provided the funding for the Film, arranging a donation of $100,000 from a California foundation . . . to [Defendant JC Films] expressly for the Film costs."  (*Id.*)

### 4.  License and Distribution Agreement

On November 4, 2022, Defendants BMC and BMG entered into a License and Distribution Agreement ("Distribution Agreement") which provided Defendant BMG "exclusive worldwide distribution rights to the Film."  (*Id.* ¶ 45; *see* Doc. 1-2, Ex. 9 at 32– 47.)  The Distribution Agreement contains the signatures of Defendant Jason Campbell, on behalf of Defendant BMC, and Robert L. Campbell, on behalf of Defendant BMG.  (*Id.*)[5]

Plaintiffs allege that in the Distribution Agreement, "Defendant BMC dba [Defendant JC Films] misrepresented that it retains ownership of all IP and owns or controls all rights to the 'title.'"  (*Id.*)  "Upon information and belief, Defendant BMG has made payments to Defendant[ ] BMC and the Campbell Defendants pursuant to the unauthorized Distribution Agreement."  (*Id.* ¶ 48.)

"On March 31, 2023, Defendant BMG was provided with a copy of the Investment Agreement," which Plaintiffs allege placed Defendant BMG "on actual notice of Plaintiffs' 66.66% ownership and distribution rights."  (*Id.* ¶ 57.)  Nonetheless, Defendant BMG

---

[5]  Robert L. Campbell is not a named Defendant or a party to this action.

3:25-cv-01736-RBM-DEB

allegedly "continued to distribute the Film and transmit revenues solely to [Defendant Jason] Campbell." (*Id*.)

On February 2, 2024, Plaintiff sent a demand letter to Defendant BMG demanding its share of the revenues and "setting forth numerous specific breaches by Defendants [Jason] Campbell, BMC," and JC Films. (*Id*.; *see* Doc. 1-2, Ex. 18 at 77–80.) "After further demands for its share of the revenues, . . . [Defendant] BMG issued a notice to the parties that it was freezing all distribution of revenues effective April 29, 2024, until a resolution of the dispute was achieved." (*Id*. ¶ 57.)

**B.    Procedural History**

On July 7, 2025, Plaintiffs filed a Complaint for Damages, Declaratory Judgment, and Injunctive Relief ("Complaint") asserting 22 causes of action against several groups of Defendants for: (1) breach of written contract; (2) breach of implied covenant of good faith and fair dealing; (3) fraud; (4) negligent misrepresentation; (5) conversion; (6) breach of fiduciary duty; (7) misappropriation of right of publicity; (8) unfair competition pursuant to Cal. Bus. & Prof. Code § 17200; (9) common law misappropriation of name; (10) passing off/false association under common law and section 43 of the Lanham Act, 15 U.S.C. § 1125(a); (11) intentional interference with prospective economic advantage; (12) unjust enrichment/common count: money had and received; (13) constructive trust; (14) accounting; (15) copyright infringement, 17 U.S.C. § 501; (16) injunctive relief; (17) civil conspiracy to commit breach of contract and misappropriation; (18) false designation of origin, 15 U.S.C. § 1125(a)(1); (19) declaratory relief; (20) declaratory relief, corporation by estoppel; (21) declaratory relief, corporation by ratification; and (22) alternative cause of action for equitable relief and restitution. (Doc. 1 ¶¶ 59–241.)

On July 31, 2025, Defendants Jason Campbell, JC Films, and BMC, each proceeding *pro se* by and through Defendant Jason Campbell, filed a Joint Answer to Complaint and Affirmative Defenses ("Joint Answer"). (Doc. 4.) Defendant Heather Campbell, proceeding *pro se*, filed an Answer to the Complaint on August 4, 2025. (Doc. 5.) On August 15, 2025, Defendant Jason Campbell filed the instant Motion. (Doc. 9.)

3:25-cv-01736-RBM-DEB

Shortly thereafter, the Court issued an order striking the Joint Answer as to Defendants JC Films and BMC and ordering Defendants JC Films and BMC to obtain counsel. (Doc. 11.) On October 2, 2025, counsel filed an appearance for the Campbell Defendants, JC Films, and BMC. (Doc. 20.) On October 15, 2025, Defendants JC Films and BMC each filed separate Answers to the Complaint. (*See* Docs. 21–22.) Defendant BMG filed a Motion to Dismiss the Complaint on September 6, 2025. (Doc. 12.)

## II. LEGAL STANDARD

Because Defendant Jason Campbell filed the Motion after he filed an Answer (*see* Doc. 4), the Court construes the Motion as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). *See Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir. 2004).

Rule 12(c) allows parties to move for judgment on the pleadings after the pleadings have been closed but prior to trial, and "within such time as not to delay the trial." Fed. R. Civ. P. 12(c). The standard for determining a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1053 & n.4 (9th Cir. 2011) ("Rule 12(c) is 'functionally identical' to Rule 12(b)(6) and that 'the same standard of review' applies to motions brought under either rule.") (quoting *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989)). "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1989). A court must not consider matters beyond the pleadings; otherwise, such a proceeding must properly be treated as a motion for summary judgment. *Id.*; *see also Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011) ("Judgment on the pleadings is limited to material included in the pleadings . . . [o]therwise, the proceeding is converted to summary judgment.") (citations omitted).

//

6

3:25-cv-01736-RBM-DEB

### III.   **DISCUSSION**

**A.   Request for Judicial Notice**

Defendant Jason Campbell "requests that this Court take judicial notice, pursuant to Federal Rule of Evidence 201, of certain facts and official records directly relevant to this matter and necessary for a fair and efficient resolution of the issues before the Court." ("Request for Judicial Notice").  (Doc. 9 at 1.)  Specifically, Defendant Jason Campbell seeks judicial notice of: (1) Exhibits A and B (*id*. at 6–31) concerning "harassment and escalating violent threats" by Plaintiff Richard Newman (*id*. at 2–3); (2) Exhibits C through H (*id*. at 31–41) concerning his service efforts in the related action pending in West Virginia (*id*. at 3); and (3) a "Complaint for Tortious Interference, Defamation, and Final Judgment Awarding Damages" and its accompanying exhibits (the "West Virginia Complaint"), which Defendant Jason Campbell filed in Civil Action No. CC-17-2025–C–80 before the Circuit Court of West Virginia, Harrison County (the "West Virginia Action") (*id*. at 42–64).  Defendant Jason Campbell also seemingly requests judicial notice of his own assertions concerning Plaintiff Richard Newman's alleged "harassment and escalating violent threats" and service issues in the West Virginia Action.  (*Id*. at 2–3.)  Plaintiffs failed to oppose such requests for judicial notice.

"When ruling on a motion for judgment on the pleadings, a court may consider documents that the pleadings incorporate by reference, as well as matters that are subject to judicial notice."  *Moledina v. Marriott Int'l, Inc.*, 635 F. Supp. 3d 941, 946 (C.D. Cal. 2022) (citing *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).  "[D]ocuments not attached to a complaint may be considered if no party questions their authenticity and the complaint relies on those documents."  *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  Pursuant to Federal Rule of Evidence 201, courts "may take judicial notice of undisputed matters of public record, . . . including documents on file in federal or state courts."  *Id*. (citations omitted).  Courts may also "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the court's territorial

3:25-cv-01736-RBM-DEB

jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. But courts "may not, on the basis of evidence outside of the Complaint, take judicial notice of facts favorable to Defendants that could reasonably be disputed." *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

First, the Court finds that the West Virginia Complaint is a proper subject of judicial notice. *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("[C]ourt filings and other matters of public record are readily verifiable and, therefore, the proper subject of judicial notice.") (cleaned up). "However, 'while the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents . . . are not.'" *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 940 (S.D. Cal. 2024) (quoting *United States v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004)). Accordingly, Defendant Jason Campbell's **REQUEST FOR JUDICIAL NOTICE** of the West Virginia Complaint (Doc. 9, Ex. H at 42–49) is **GRANTED**.[6]

As to Exhibits A through H, the Court finds these exhibits are not relevant to the resolution of the issues raised in the instant Motion. *See Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025 n.2 (9th Cir. 2006) ("A court may decline to take judicial notice of irrelevant documents."). Defendant Jason Campbell argues that the Court "should take into account [Plaintiff Richard Newman's] ongoing behavior, including public harassment, defamatory postings, and escalating threats" because "[s]uch conduct is directly relevant to the credibility of the claims . . . ." (Doc. 9 at 4.) These exhibits include: (1) screenshots of comments on a social media platform (*id.*, Ex. A at 6; *id.*, Ex. H at 39); (2) a police report from the Bridgeport Police Department in West Virginia dated

---

[6] The Court takes judicial notice of the existence of the ongoing state court proceedings between certain parties but does not judicially notice the truth of any facts asserted in the West Virginia Complaint.

3:25-cv-01736-RBM-DEB

August 12, 2025 (*id.*, Ex. B at 7–29); (3) postal service receipts (*id.*, Ex. C at 30–32); (4) a "Comprehensive Report" belonging to Plaintiff Richard Newman (*id.*, Ex. D at 33–35); (5) e-mail correspondence (*id.*, Ex. E at 36–37); and (6) text messages (*id.*, Ex. F at 38). While Plaintiff Richard Newman's alleged conduct may be relevant to Defendant Jason Campbell's claims in the West Virginia Action, such conduct is not relevant to the legal issues presently before the Court. Indeed, "the determination of credibility is a responsibility that belongs to the finder of fact at trial, not to the Court on a request for judicial notice." *Hightower v. S. Cal., Permanente Grp.*, Case No. 5:22-cv-00181-JWH-KKx, at *1 (C.D. Cal. May 17, 2022). Defendant Jason Campbell's **REQUEST FOR JUDICIAL NOTICE** of Exhibits A through H (Doc. 9 at 6–41) is therefore **DENIED**.

The Court further finds Defendant Jason Campbell's assertions, that Plaintiff Richard Newman "engaged in an ongoing campaign of harassment against" him and has "deliberately avoided service" in the West Virginia Action, are not relevant to the legal issues presently before the Court. (*See* Doc. 9 at 2–3.) Defendant Jason Campbell's statements are also subject to reasonable dispute, and are therefore not proper subjects of judicial notice, because his own statements are not generally known and "do not constitute a 'source[ ] whose accuracy cannot reasonably be questioned.'" *See Garst v. Cramer*, Case No.: 25-CV-2341-GPC-MSB, 2026 WL 310196, at *3 (S.D. Cal. Feb. 5, 2026) (quoting *Holley v. Tripp*, Case No. 2:24-cv-00071-AKB, 2024 WL 3966444, at *3 (D. Idaho Aug. 27, 2024)); *Corinthian Colleges*, 655 F.3d at 999. To the extent Defendant Jason Campbell seeks judicial notice of these assertions, his request is **DENIED**.

**B.   First-Filed Rule**

Defendant Jason Campbell seeks to dismiss this action under the "first-filed" rule, arguing that the West Virginia Action "was filed first, involves the same core dispute, and is the proper forum for resolution." (Doc. 9 at 1–2, 4.)

The first-filed, or "first-to-file," rule is "a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."

3:25-cv-01736-RBM-DEB

*Pacesetter Sys. v. Medtronic, Inc.*, 678 F.2d 93, 94–95 (9th Cir. 1982).  The first-to-file rule "is designed to avoid placing an unnecessary burden on the federal judiciary, and to avoid the embarrassment of conflicting judgments." *Church of Scientology of Cal. v. U.S. Dep't of Army*, 611 F.2d 738, 750 (9th Cir. 1979).  Under this rule, "the second district court has discretion to transfer, stay, or dismiss the second case in the interest of efficiency and judicial economy."  *Bozic v. U.S. Dist. Ct.*, 888 F.3d 1048, 1051-52 (9th Cir. 2018) (quoting *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)); *see Alltrade, Inc. v. Uniweld Prods. Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) ("The most basic aspect of the first-to-file rule is that it is discretionary.").

Defendant Jason Campbell argues that the first-to-file rule warrants dismissal of the instant action based on the pending action in West Virginia state court.  (Doc. 9 at 1.)  The first-to-file rule, however, applies to cases "previously filed in another *district court*." *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015) (emphasis added); *see SAES Getters S.p.A. v. Aeronex, Inc.*, 219 F. Supp. 2d 1081, 1089 (S.D. Cal. 2002) ("The first-filed rule is a comity rule for resolving conflicts of jurisdiction where parallel actions are filed in *different federal district courts*.") (emphasis added).  "As such, it does not enable federal courts to dismiss, stay, or transfer a case based on an earlier-filed suit pending in state court." *Tinnin v. Sutter Valley Med. Found.*, 647 F. Supp. 3d 864, 871 (E.D. Cal. 2022) (quoting *Murphy v. Viad Corp.*, Case No. CV 21-7839 PSG (MARx), 2022 WL 3137720, at *3–*4 (C.D. Cal. May 13, 2022)); *see Matthews v. Lemonade Ins. Co.*, —F. Supp. 3d—, 2025 WL 3153635, at *7 & n.4 (S.D. Cal. Nov. 10, 2025) (following "the majority of courts and declin[ing] to apply the first-to-file rule to underlying state court proceedings.").  Instead, "[c]ourts routinely apply *Colorado River* when determining whether to stay a federal district case based on an underlying state court matter." *Matthews*, 2025 WL 3153635, at *7; *see Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  The Court finds the first-to-file rule is inapplicable and therefore **DENIES** Defendant Jason Campbell's Motion on this basis.

//

3:25-cv-01736-RBM-DEB

While Defendant Jason Campbell did not raise this issue, the Court briefly addresses the *Colorado River* doctrine and finds dismissal under this doctrine is also unwarranted because the West Virginia Action will not resolve the issues presented in this action. *See Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 845 (9th Cir. 2017) ("[T]he existence of a substantial doubt as to whether the state proceedings will resolve the federal action precludes a *Colorado River* stay or dismissal."). The West Virginia Action involves claims against Plaintiff Richard Newman for "tortious interference" and dissemination of knowingly false information. (*See* Doc. 9 at 44–49.) On the other hand, this action raises numerous state and federal law issues that are not addressed in the West Virginia Action. *See also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) ("[T]he presence of federal-law issues must always be a major consideration weighing against surrender [of federal jurisdiction]."). Plaintiff Brycen Newman, whose life story is the subject of the Film, asserts such claims in this action to enforce his privacy, intellectual property, and contractual rights and is not a party to the West Virginia Action. (*See* Doc. 1 ¶¶ 1, 3.) Defendants Heather Campbell, BMC, and BMG are also not parties to the West Virginia Action but are alleged to be significantly, if not equally, responsible for Plaintiffs' asserted harms in this action. (*See id.* ¶¶ 1–3, 49–51, 58.)

Because the cases involve different legal issues against different defendants for different conduct, the outcome of the West Virginia Action will not dictate the resolution of this case. *See Murphy v. Viad Corp.*, Case No. CV 21-7839 PSG (MARx), 2022 WL 3137720, at *6 (C.D. Cal. May 13, 2022) (denying a stay under the *Colorado River* doctrine because the underlying action would not resolve all claims where the defendants were different and the later-filed action involved additional claims not asserted in the first action). Accordingly, dismissal under the *Colorado River* doctrine would be unwarranted.

//

//

//

//

11

3:25-cv-01736-RBM-DEB

## IV.   CONCLUSION

Based on the foregoing reasons, Defendant Jason Campbell's Motion (Doc. 9) is **DENIED**.

**IT IS SO ORDERED**.

DATE:  March 18, 2026

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE

12

3:25-cv-01736-RBM-DEB